NO. 07-02-0455-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



DECEMBER 9, 2004



______________________________




DWAYNE R. MCBEAN, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2001-438413; HONORABLE CECIL PURYEAR, JUDGE



_______________________________



Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

OPINION
 

 Appellant Dwayne R. McBean appeals from his conviction for aggravated sexual
assault and sentence of 60 years confinement. Presenting two issues, he urges that the
trial court erred by overruling his challenge to a veniremember and that he received
ineffective assistance of counsel during the punishment phase of trial. We affirm. 

BACKGROUND

 Appellant Dwayne R. McBean and Tina Williams were involved in an extended
personal relationship during which Williams and her two children would occasionally visit
at appellant's home. During one such stay, Williams discovered appellant sexually
assaulting her 13-year old daughter. Appellant was indicted in Lubbock County for
aggravated sexual assault. The Lubbock County District Attorney's office represented the
State. 

 Trial was to a jury. One member of the jury venire was Kim Hayes, an assistant
district attorney in the Lubbock County DA's office. During voir dire, appellant's counsel
questioned Hayes as to whether she would be able to be an impartial juror considering that
her employer was the agency prosecuting the case. Hayes stated that she had no
knowledge of or information as to the case and she could be fair and impartial as a juror. 
Appellant's counsel challenged her for cause. Appellant's counsel also advised the trial
court that there were numerous veniremembers that counsel already had decided to strike
and that if a peremptory challenge had to be used to strike Hayes, which it would be, then
appellant would have to ask the Court to grant an additional peremptory challenge. The
challenge for cause was denied. No other ruling was sought and none was made. 

 The docket sheet reflects that following voir dire of the jury venire the parties
exercised their peremptory challenges then the jury was empaneled and sworn. Although
the record does not clearly reflect when the State and appellant handed their peremptory
challenge lists to the clerk, see Tex. Crim. Proc. Code Ann. art 35.25, 35.26(a) (Vernon
1989), (1) the reporter's record shows that at the conclusion of voir dire a recess was taken,
after which the judge announced which veniremembers would comprise the jury. After the
court announced the members of the jury, counsel for appellant stated that one of
appellant's peremptory challenges had been exercised to strike veniremember Hayes and
the remainder of appellant's challenges had been used. Counsel then identified the
seventh juror as objectionable and requested an additional peremptory challenge to strike
her. The request was denied and the jury was sworn. 

 Appellant was found guilty. During the punishment phase of trial the State introduced
copies of judgments relating to appellant's prior misdemeanor offenses. Appellant called
two witnesses, Doris Leal, an investigator for the Lubbock County District Attorney's Office,
and Adam Puckett, a probation officer for Lubbock County. Through Leal appellant raised
the issue of accepting responsibility for criminal behavior. Leal confirmed that appellant
had been placed on community supervision for a misdemeanor offense, pled true to
probation violations during a revocation hearing related to that community supervision, and
had accepted responsibility for violating his community supervision. Puckett was called to
testify regarding probation conditions for sex offenders. Upon cross-examination by the
State, Puckett elaborated on sex offender counseling and the importance of offenders
accepting responsibility for the charged offense in order for the counseling to be effective.

 During summation at the punishment phase, appellant's counsel reminded the jury
that appellant had accepted responsibility for each of the misdemeanor cases and his
violations of probation conditions for those cases, and asked the jury to consider probation
as an appropriate punishment. The State made no reference during summation to whether
appellant had accepted responsibility for the aggravated sexual assault pending before the
jury. The jury assessed appellant's punishment at 60 years confinement.

 Appellant's first issue asserts that the trial court erred in overruling his challenge for
cause as to veniremember Hayes because she was an employee of the prosecuting
attorney's office. His second issue alleges ineffective assistance of counsel because
counsel failed to object when the prosecutor allegedly commented on appellant's failure to
testify and appellant's exercise of his right to a trial by jury. 

ISSUE ONE: FAILURE TO GRANT

 CHALLENGE TO A VENIREMEMBER

 

 Appellant does not assert that Hayes was personally biased or prejudiced. Instead,
he urges that she was biased as a matter of law because of her employment. 

 To preserve error for appellate review the complaining party must make a timely
objection specifying the grounds for the objection if the grounds are not apparent from the
context; the objection must be made at the earliest possible opportunity; the complaining
party must obtain an adverse ruling from the trial court; and the issue on appeal must
correspond to the objection made at trial. See Tex. R. App. P. 33.1(a)(1)(A) (2); Wilson v.
State, 71 S.W.3d 346, 349 (Tex.Crim.App. 2002); Dixon v. State, 2 S.W.3d 263, 265
(Tex.Crim.App.1998). 

 Appellant urges that he preserved error in regard to the trial court's denial of his
challenge to Hayes because he complied with the requirements set out in Johnson v. State, 
43 S.W.3d 1 (Tex. Crim. App. 2001): he used a peremptory challenge on Hayes, used all
his remaining peremptory challenges, and asked for an additional peremptory challenge
to strike an objectionable, specified veniremember who served on the jury. We disagree
that appellant's actions to preserve error conformed to those presented in Johnson. 

 In Johnson the trial court erroneously denied Johnson's challenges for cause of two
veniremembers. Johnson used peremptory challenges to strike the two veniremembers
and requested two additional peremptory challenges. The request was denied. Id. at 3.
During voir dire Johnson had identified two objectionable veniremembers who eventually
sat on the jury. Id. at 4. Thus, in Johnson, a non-capital case as is appellant's case, the
defendant requested additional peremptory challenges, identified specific objectionable
veniremembers before his peremptory challenges were exercised, and used peremptory
challenges to strike the disqualified veniremembers before names of the jury members
were called out. See art. 35.26. 

 The record before us shows that appellant did not advise the trial court that he had
used a peremptory challenge to strike Hayes, request an additional peremptory challenge
and identify a specific veniremember who would be struck with the challenge until after he
exercised his peremptory challenges, turned in his strike list, and members of the jury had
been identified. Appellant's facts differ from those in Johnson. 

 Peremptory challenges to prospective jurors are provided pursuant to statute and
are made without assigning any reason. Art. 34.14. In a non-capital felony case such as
the one under consideration, the State and defendant are each entitled to ten peremptory
challenges. Art. 35.15. The challenges are exercised by the parties striking names of
prospective jurors from lists provided by the clerk, then returning the lists to the clerk. In
a felony trial the first twelve names which have not been struck are called and comprise the
jury. See art. 35.26. 

 The trial court's refusal to excuse a disqualified veniremember pursuant to a
challenge for cause is error, see Johnson, 43 S.W.3d at 5, but does not necessarily
constitute harmful error because a peremptory challenge may be used to strike the
disqualified veniremember . See id. at 5-7. But, when a challenge for cause is erroneously
denied and the challenging party uses a peremptory challenge to strike the disqualified
veniremember, then the erroneous denial may be harmful error because the challenging
party has effectively received fewer peremptory challenges than provided by statute. See
id. at 5-6; Martinez v. State, 763 S.W.2d 413, 415 (Tex.Crim.App. 1988). In such a
circumstance the aggrieved party has suffered harmful error if the party (1) used a
peremptory challenge to strike the challenged, disqualified veniremember; (2) exhausted
all remaining peremptory challenges; (3) requested and was denied an additional
peremptory challenge, and (4) identified a specific veniremember who would have been
removed with the additional challenge, and who thereafter sat as a juror. See Johnson, 43
S.W.3d at 2, 4, 5-6; Martinez, 763 S.W.2d at 415. In instances of erroneous denial of
challenges for cause, however, the cases do not always clearly distinguish between steps
required to preserve error from harm analysis. See Johnson, 43 S.W.3d at 5 n.6. 

 In the matter before us, appellant's counsel advised the trial court during voir dire
that a peremptory challenge would be used on Hayes and that an additional peremptory
challenge would be asked for. As of that time, however, voir dire was continuing, appellant
had not exercised any peremptory challenges, he was not in the process of exercising his
challenges, nor did appellant specifically identify any veniremember who would be stricken
if an additional peremptory challenge were to be granted. It was only after the parties had
exercised their peremptory challenges and identities of the jurors were revealed that
appellant advised the trial court that he had actually exercised a peremptory challenge to
strike Hayes, made a request for an additional peremptory challenge, identified one of the
chosen jurors as objectionable, and obtained a ruling on the request. 

 Article 35.26(a) calls for the parties in non-capital felony cases and in capital felony
cases wherein the death penalty will not be sought to make or decline to make peremptory
challenges before names of those to serve as jurors are determined and the jurors are
called. Allowing either party to exercise a peremptory challenge after the jurors are
identified would not comply with the unambiguous statutory language. See art. 35.25 and
art. 35.26. (3) 

 Peremptory challenges in civil cases are exercised in a similar manner as that
provided for in criminal cases: following jury voir dire peremptory challenges are made by
striking or erasing names from venire lists and turning the strike lists in to the clerk. In
district court cases the first twelve names not stricken are called and "shall be the jury." 
See Tex. R. Civ. P. 232, 234. In Carpenter v. Wyatt Constr. Co., 501 S.W.2d 748
(Tex.Civ.App.-Houston [14th Dist.] 1973, writ ref'd n.r.e.), a civil case, the court addressed
a fact situation similar to the one before us. In Carpenter, a challenge for cause was made
during voir dire of the jury panel. After peremptory challenges were exercised and the jury
had been selected, but before the jury was sworn or seated, the Carpenters made a bill of
exceptions. In their bill, they complained of the overruling of their challenge for cause,
complained that they were forced to use a peremptory challenge on the venireperson
challenged for cause, and identified a specific, chosen juror on whom they would have
exercised the challenge had they not been forced to use the strike on the challenged
venireperson. The court held that the bill of exceptions was not timely to preserve error. 
Id. at 750. 

 Language in Carpenter and other civil cases indicates that in order to preserve error
in civil cases the complaining party must identify objectionable veniremembers before
exercising peremptory challenges. See Hallett v. Houston N.W. Med. Ctr., 689 S.W.2d
888, 890 (Tex. 1985) ("For these reasons the complaining party waives any error by not
timely bringing such error to the attention of the trial court prior to making his peremptory
challenges"); Beavers v. Northrop Worldwide Aircraft Servs., Inc., 821 S.W.2d 669, 673
(Tex.App.-Amarillo 1991, writ denied) (Hallett requires that the trial court be told specifically
which objectionable jurors will remain after peremptory strikes are made and requires such
notification be made prior to the actual exercise of those strikes.); Carpenter, 501 S.W.2d
at 751 ("To preserve error, such objection must be made known before the exercise of
peremptory strikes."). 

 In order for an objection or complaint as to an action of the trial court to be timely,
it must be made at the earliest possible opportunity. See Wilson, 71 S.W.3d at 349; Dixon,
2 S.W.3d at 265. Appellant could have advised the trial court when he actually exercised
his peremptory challenges that he was using a challenge to strike Hayes, was exhausting
the remainder of his challenges, was requesting an additional peremptory challenge and
had to accept a specifically-identified objectionable venireperson because he used a strike
on Hayes. For, it was at that time when appellant's unbridled right to exercise the full
number of statutory peremptory challenges was violated. See Johnson, 43 S.W.3d at 8
(Keller, P.J., concurring). At that point the trial court could have examined appellant's strike
list, reconsidered denial of the challenge for cause, and granted the request for another
peremptory strike. See id. at 8, 9 ("Courts should err on the side of granting for cause
challenges, not on denying them . . . if the trial court gives the defendant sufficient extra
peremptory challenges then the error is cured.") By delaying his request until after the
parties' peremptory challenges had been exercised and the jury members disclosed,
appellant not only failed to make his complaint known at the earliest time, but delayed
making it known until a time outside that provided by statute for exercising peremptory
challenges. See art. 35.25 and art. 35.26. 

 The conclusion follows that appellant did not timely (1) advise the trial court that he
had actually used a peremptory challenge to strike Hayes and had used all his other
peremptory challenges, (4) (2) request an additional peremptory challenge and (3) identify a
specific objectionable juror that he would strike if given an additional peremptory challenge. 
Assuming, without deciding, that the trial court erred in denying appellant's challenge for
cause, error was not preserved for review. TRAP 33.1(a)(1).

 Appellant's first issue is overruled. (5) 

ISSUE TWO: INEFFECTIVE ASSISTANCE 

OF COUNSEL


 Appellant did not testify at either the guilt-innocence or punishment phases of trial. 
He sought probation by offering testimony of other witnesses at the punishment phase as
to his eligibility for probation, conditions placed on sexual offender probationers, success
rates for sexual offenders placed on probation and his past probation history as shown by
prior misdemeanor judgments granting probation which had been introduced by the State. 
Appellant points to three questions asked by the prosecutor on cross-examination of
appellant's witness Adam Puckett, a probation officer for Lubbock County, which appellant
urges as the basis of his ineffective assistance claim. By those three questions the State
asked about and elicited testimony to the effect that a significant relationship existed
between sexual offender probationers accepting responsibility for their crimes and
successful completion of probation, and that most probationers were in that status because
they pled guilty and took responsibility initially. Appellant contends that this line of
questioning improperly commented on his right to remain silent and his trial counsel's
failure to object denied appellant his constitutional right to remain silent. Relying on
Robertson v. State, 100 S.W.3d 36 (Tex.App.-Waco 2002, pet. ref'd), appellant contends
that (1) the prosecutor's comments on responsibility were an improper reference to
appellant's failure to testify; (2) the comments were ongoing and flagrant; (3) trial counsel's
failure to object denied the judge an opportunity to instruct the jury to disregard the
improper reference; (4) the improper remarks greatly affected the jurors during the
punishment phase of the trial; and (5) the improper comments affected the severity of the
punishment imposed by the jury. Hence, appellant contends, his trial counsel was
ineffective and the violation of his constitutional right to remain silent harmed him because
the jury assessed a more severe punishment than it would have assessed otherwise. 

 A claim of ineffective assistance of counsel requires the appellant to show that (1)
counsel's performance was so deficient that counsel was not functioning as the "counsel"
guaranteed under the Sixth Amendment, and (2) counsel's deficient performance
prejudiced appellant, depriving him of a fair trial. Strickland v. Washington, 466 U.S. 668,
687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The defendant must prove by a
preponderance of the evidence that there is no plausible professional reason for a specific
act or omission. See Bone v. State, 77 S.W.3d 828, 836 (Tex.Crim.App. 2002). Just as
a criminal defendant is entitled to an opportunity to explain himself and present evidence
on his behalf, defense counsel should also ordinarily be accorded an opportunity to explain
his or her actions before being labeled as ineffective. Id. A record which is silent as to why
appellant's trial counsel took or failed to take certain actions is generally not adequate to
establish ineffective assistance of counsel. See Rylander v. State, 101 S.W.3d 107, 111
(Tex.Crim.App. 2003). An appellate court will not use speculation as to the reasons for
questioned actions or omissions of counsel to overcome the strong presumption that
counsel made trial decisions in the exercise of reasonable professional judgment. See
Jackson v. State, 877 S.W.2d 768, 771 (Tex.Crim.App.1994); Lopez v. State, 79 S.W.3d
108, 112 (Tex.App.-Amarillo 2002, no pet.). 

 Appellant references no evidence of reasons for counsel's failure to object to the
State's questions and the witness's responses. Absent such evidence, and based on the
record before us, the presumption that counsel's actions were the product of reasonable
professional judgment prevails. We will not use speculation as to counsel's mental
processes as the basis for concluding that counsel was ineffective. 

 Appellant has not shown that trial counsel's performance was so deficient that
appellant was not afforded the counsel guaranteed by the Sixth Amendment. His second
issue is overruled. 

 The judgment of the trial court is affirmed. 



 Phil Johnson

 Chief Justice




Publish. 













1. 
 " " 
2. 
"" 
3. 
 
 
4. Of course, the record must substantiate the statement.
5. ' 
 ' 
 ' 
 



 mso-pagination:widow-orphan;
 tab-stops:center 3.25in right 6.5in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoCaption, li.MsoCaption, div.MsoCaption
 {mso-style-noshow:yes;
 mso-style-priority:35;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 mso-pagination:widow-orphan;
 font-size:9.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.MsoFootnoteReference
 {mso-style-noshow:yes;
 mso-style-priority:99;
 vertical-align:super;}
p.MsoTitle, li.MsoTitle, div.MsoTitle
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:15.0pt;
 margin-left:0in;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpFirst, li.MsoTitleCxSpFirst, div.MsoTitleCxSpFirst
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpMiddle, li.MsoTitleCxSpMiddle, div.MsoTitleCxSpMiddle
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpLast, li.MsoTitleCxSpLast, div.MsoTitleCxSpLast
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:15.0pt;
 margin-left:0in;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoSubtitle, li.MsoSubtitle, div.MsoSubtitle
 {mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Subtitle Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 mso-bidi-language:EN-US;
 font-style:italic;}
a:link, span.MsoHyperlink
 {mso-style-noshow:yes;
 mso-style-priority:99;
 color:blue;
 text-decoration:underline;
 text-underline:single;}
a:visited, span.MsoHyperlinkFollowed
 {mso-style-noshow:yes;
 mso-style-priority:99;
 color:purple;
 mso-themecolor:followedhyperlink;
 text-decoration:underline;
 text-underline:single;}
p.MsoAcetate, li.MsoAcetate, div.MsoAcetate
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Balloon Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoNoSpacing, li.MsoNoSpacing, div.MsoNoSpacing
 {mso-style-priority:1;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-parent:"";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraph, li.MsoListParagraph, div.MsoListParagraph
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpFirst, li.MsoListParagraphCxSpFirst, div.MsoListParagraphCxSpFirst
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpMiddle, li.MsoListParagraphCxSpMiddle, div.MsoListParagraphCxSpMiddle
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpLast, li.MsoListParagraphCxSpLast, div.MsoListParagraphCxSpLast
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoQuote, li.MsoQuote, div.MsoQuote
 {mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Quote Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:black;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoIntenseQuote, li.MsoIntenseQuote, div.MsoIntenseQuote
 {mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Intense Quote Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:.65in;
 margin-bottom:14.0pt;
 margin-left:.65in;
 line-height:115%;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD .5pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleEmphasis
 {mso-style-priority:19;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:gray;
 font-style:italic;}
span.MsoIntenseEmphasis
 {mso-style-priority:21;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleReference
 {mso-style-priority:31;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 text-decoration:underline;
 text-underline:single;}
span.MsoIntenseReference
 {mso-style-priority:32;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 letter-spacing:.25pt;
 font-weight:bold;
 text-decoration:underline;
 text-underline:single;}
span.MsoBookTitle
 {mso-style-priority:33;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 letter-spacing:.25pt;
 font-weight:bold;}
p.MsoTocHeading, li.MsoTocHeading, div.MsoTocHeading
 {mso-style-noshow:yes;
 mso-style-priority:39;
 mso-style-qformat:yes;
 mso-style-parent:"Heading 1";
 mso-style-next:Normal;
 margin-top:24.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.Heading1Char
 {mso-style-name:"Heading 1 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 1";
 mso-ansi-font-size:14.0pt;
 mso-bidi-font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 font-weight:bold;}
span.Heading2Char
 {mso-style-name:"Heading 2 Char";
 mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 2";
 mso-ansi-font-size:13.0pt;
 mso-bidi-font-size:13.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading3Char
 {mso-style-name:"Heading 3 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 3";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading4Char
 {mso-style-name:"Heading 4 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 4";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.Heading5Char
 {mso-style-name:"Heading 5 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 5";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;}
span.Heading6Char
 {mso-style-name:"Heading 6 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 6";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 font-style:italic;}
span.Heading7Char
 {mso-style-name:"Heading 7 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 7";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.Heading8Char
 {mso-style-name:"Heading 8 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 8";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;}
span.Heading9Char
 {mso-style-name:"Heading 9 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 9";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.TitleChar
 {mso-style-name:"Title Char";
 mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Title;
 mso-ansi-font-size:26.0pt;
 mso-bidi-font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;}
span.SubtitleChar
 {mso-style-name:"Subtitle Char";
 mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Subtitle;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 font-style:italic;}
span.QuoteChar
 {mso-style-name:"Quote Char";
 mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Quote;
 color:black;
 font-style:italic;}
span.IntenseQuoteChar
 {mso-style-name:"Intense Quote Char";
 mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Intense Quote";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
p.NewDocument, li.NewDocument, div.NewDocument
 {mso-style-name:"New Document";
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 font-family:"Calibri","sans-serif";
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
span.term1
 {mso-style-name:term1;
 mso-style-unhide:no;
 font-weight:bold;}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 font-size:10.0pt;
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:Arial;
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:Arial;}
 /* Page Definitions */
 @page
 {mso-footnote-separator:url("07-09-0390.CR%20opinion_files/header.htm") fs;
 mso-footnote-continuation-separator:url("07-09-0390.CR%20opinion_files/header.htm") fcs;
 mso-endnote-separator:url("07-09-0390.CR%20opinion_files/header.htm") es;
 mso-endnote-continuation-separator:url("07-09-0390.CR%20opinion_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-title-page:yes;
 mso-footer:url("07-09-0390.CR%20opinion_files/header.htm") f1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
-->








NO. 07-09-00390-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL A

 



AUGUST
16, 2011

 



 

NATASHA MARIE HELLER, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

 FROM THE COUNTY COURT AT LAW NO. 2
OF RANDALL COUNTY;

 

NO. 2009-5244-2; HONORABLE RONALD WALKER JR., JUDGE



 



 

Before CAMPBELL
and HANCOCK and PIRTLE, JJ.

 

 

OPINION

            Appellant
Natasha Marie Heller was charged by information with misdemeanor criminal
trespass.[1]  At trial, over appellants objection, the
trial court instructed the jury it could find her guilty of a lesser-included
offense of attempted criminal trespass. 
The jury found her guilty of the lesser offense, and imposed a fine of
$500 as punishment.  We will overrule her
appellate issue, and affirm the judgment.

 

Background

            The
information alleged appellant entered a habitation.  Evidence showed that appellant knocked on the
door of the home of the complainant, seeking to discuss child support payments
he owed her.  When the door was not
answered, appellant raised a window of the home and extended her arm and head
through the window into the homes interior. 
The complainants wife saw appellant and called police.  The complainant and his wife denied appellant
had consent to enter their home.

After presentation of the States
case, appellant moved for an instructed verdict on the charge of criminal
trespass, arguing the State had not proved notice or a completed trespass. The
trial court denied the instructed verdict and, over appellants objection,
included in the charge an instruction on the lesser-included offense of
attempted criminal trespass.  As noted,
the jury convicted appellant of the lesser offense. 

Analysis

            Appellants
sole issue on appeal is a contention the trial court erred by including the
lesser-included offense of attempted criminal trespass in the jury charge.  

Under
the two-pronged test applied to determine whether an offense is a lesser-
included offense, the first prong examines whether the lesser offense is included within the proof necessary to establish the offense charged.  Rousseau v. State, 855
S.W.2d 666, 672-73 (Tex.Crim.App. 1993); Royster v. State, 622 S.W.2d
442, 446 (Tex.Crim.App. 1981). 
Application of the first prong of the test involves a question of
law.  Hall
v. State, 225 S.W.3d 524, 535 (Tex.Crim.App. 2007).  The second prong of the test considers
whether there is evidence to permit the jury rationally to find that the
defendant, if guilty, is guilty only of the lesser offense. 
Rousseau, 855 S.W.2d at 673. 
Appellants contention deals only with the first prong of the test. 

By
statute, an offense is a lesser-included offense if it consists of an attempt
to commit the offense charged.  Tex. Code
Crim. Proc. Ann. art. 37.09(4) (West 2010). 
Penal Code Section 15.01 defines criminal attempt.  It provides, in part, A person commits an
offense if, with specific intent to commit an offense, he does an act amounting
to more than mere preparation that tends but fails to effect the commission of
the offense intended. Tex. Penal Code Ann. § 15.01(a) (West 2011).  

There are instances in which courts
have found the inconsistency between the specific intent to commit an offense
requirement in the criminal attempt statute and the elements of a particular
attempted offense precluded its use as a lesser-included offense under article
37.09(4).  See Gonzales v. State, 532 S.W.2d 343, 345 (Tex.Crim.App. 1976)
(instruction on attempted involuntary manslaughter properly denied as
lesser-included offense of attempted murder; involuntary manslaughter negates
specific intent to kill); Yandell
v. State,
46 S.W.3d 357, 361 (Tex.App.--Austin 2001, pet. ref'd) (deadly conduct not
lesser-included offense of manslaughter under art. 37.09(4); it is impossible
to specifically intend to recklessly kill another).  In its analysis in one such situation, the
court in Strong v. State, 87
S.W.3d 206 (Tex.App.--Dallas 2002, pet. refd), pointed out that because the
offense of driving while intoxicated has no culpable mental state,[2]
the attempt statute cannot apply to DWI. 
Id. at 217.

Appellants argument in this appeal
is founded on the same premise.  She
contends Penal Code § 30.05, defining the offense of criminal trespass,
contains no required culpable mental state, so the attempt statute can have no
application to charges of violation of § 30.05. 
Accordingly, appellant argues, the court erred by instructing the jury
on attempted criminal trespass.  The
basic difficulty with appellants argument is that its premise is faulty.  As the State here argues, the Court of
Criminal Appeals rather clearly has held that Penal Code § 6.02 operates to
require that the conduct proscribed by § 30.05 be accompanied by an
intentional, knowing or reckless culpable mental state.  Holloway v. State, 583 S.W.2d 376, 377 (Tex.Crim.App. 1979); West v. State,
567 S.W.2d 515, 516 (Tex.Crim.App. 1978); accord
De Vaughn v. State, 239 S.W.3d 351, 356 (Tex.App.--San Antonio 2007, no
pet.); see Tex. Penal Code Ann. §
6.02(b), (c) (West 2011).   

In support of her contention that
criminal trespass requires no culpable mental state, appellant cites Moses v. State, 814 S.W.2d 437, 442
(Tex.App.--Austin 1991, pet. refd as untimely).  For that proposition, Moses relies on Reed v. State,
762 S.W.2d 640, 646 (Tex.App.--Texarkana 1988, pet. refd).  Both cases contain the statement that no
culpable mental state is required under § 30.05 other than a volitional
refusal to leave when requested.  The
State notes that we also have cited Reed
for the same proposition, on two occasions. 
See Dunn v. State, 979 S.W.2d
403, 408 (Tex.App.--Amarillo 1998, pet. refd); Brumley v. State, 804 S.W.2d 659 (Tex.App.--Amarillo 1991, no
pet.).  The State urges that we disavow Dunn and Brumley because of their apparent conflict with the Court of
Criminal Appeals holdings regarding the operation of Penal Code § 6.02, in Holloway, 583 S.W.2d at 377, and West, 567 S.W.2d at 516. 


For our purpose today, we think it
sufficient to note that the volitional refusal to leave language from Reed, 762 S.W.2d at 646, arose from a
prosecution under § 30.05(a)(2), in which it was alleged the trespasser
received notice to depart but failed to do so.  Tex. Penal Code Ann. § 30.05(a)(2) (West 2011);
Reed, 762 S.W.2d at 646.  The same was true of Dunn, Moses, and Brumley.  See Dunn,
979 S.W.2d at 408; Moses, 814 S.W.2d
at 442; Brumley, 804 S.W.2d at
662.  Our present case is one in which
appellant was prosecuted under § 30.05(a)(1), by which she had notice that
[her] entry was forbidden.[3]  The volitional refusal to leave language
originating in Reed has no
application in a case under § 30.05(a)(1). 


Citing Gonzales, 532 S.W.2d at 345, and other cases, the court in Strong made the further statement that
[t]he attempt statute does not apply when the culpable mental state for the
offense attempted is less than knowing. 
Strong, 87 S.W.3d at 217.  We need not consider the application of that
statement to the case at bar, however, because the information under which
appellant was accused of criminal trespass alleged that she entered the habitation
intentionally and knowingly.  No
culpable mental state less than knowing is involved here.  See
Hall, 225 S.W.3d at 535 (elements and
facts alleged in the charging instrument are used to find lesser-included
offenses). 

Finally, we note that the offense of
attempted criminal trespass as a lesser-included offense has been recognized by
Texas cases.  See Jones v. State, 170 S.W.3d 772, 776 (Tex.App.--Waco
2005, pet. refd) (attempted criminal trespass can be a lesser-included offense
of attempted burglary); Johnson v. State,
773 S.W.2d 721, 725 (Tex.App.--Houston [1st Dist.] 1989, pet. refd)
(indicating attempted criminal trespass may be a lesser-included offense of
burglary of a building).  

For these reasons, we overrule
appellants sole issue on appeal
and affirm the judgment of the trial court.

 

                                                                                                James
T. Campbell

                                                                                                            Justice

Publish.

 

 

 











[1]
See Tex. Penal Code Ann. § 30.05 (West 2011).





[2]
Tex. Penal Code
Ann.  § 49.11(a) (West 2011). 





[3]
See Salazar v. State, 284 S.W.3d 874, 880 (Tex.Crim.App.
2009) (habitation inherently provides notice that entry is forbidden).