Michael Ray DUNN aka Christopher Wayne Adams, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 07–97–0202–CR to 07–97–0206–CR.

Court of Appeals of Texas, Amarillo.

Oct. 20, 1998.

Rehearing Overruled Dec. 9, 1998.

David Scott, Perryton, for appellant.

John Mann, District Attorney, Pampa, for appellee.

Before BOYD, C.J., and DODSON and REAVIS, JJ.

REAVIS, Justice.

Charged by five separate indictments with aggravated robbery, aggravated assault of a peace officer, and three aggravated kidnappings, appellant Michael Ray Dunn aka Christopher Wayne Adams was found guilty of all charges by a Wheeler County jury. By this appeal, he raises four points of error challenging all five convictions.[1] Finding no reversible error, we will affirm.

The evidence indicates that at around 8:00 o'clock in the morning of December 30, 1996, Puckett's Grocery Store in Shamrock, Texas, was just opening for business when appellant drove into the parking lot and parked just outside the front doors. Appellant, a Caucasian, entered the store and inquired about employment opportunities; the store manager told him no jobs were available but, nonetheless, gave appellant an employment application to complete. Appellant took the application and walked outside to the pickup only to return a few seconds later carrying a sawed-off .22 caliber rifle.[2] Appellant pointed the weapon at the store manager and demanded money. The manager complied by emptying several cash register drawers containing several thousand dollars in cash into a brown paper "Puckett's Food Stores" sack. Appellant then led the manager and two other store employees to the stockroom where he bound their wrists and ankles with duct tape.

Once the employees were bound with tape, appellant took the keys to the manager's car and left through the front door of the store. The three employees quickly unbound themselves and called 911. They then watched

---

1. Although both the trial court and this Court designated separate cause numbers to each of the five offenses, because appellant has filed only one brief, the instant cases will be treated as a consolidated appeal.

2. The three employees/witnesses who were in the store during the robbery all testified they believed the weapon to be a sawed-off shotgun, but when appellant was subsequently apprehended he was in possession of a sawed-off .22 caliber rifle.

out the back windows of the stockroom as appellant unlocked and drove away in the manager's car.

In responding to the 911 call, in which one of the employee's incorrectly claimed to have been robbed by a "Hispanic man" with a "sawed-off shotgun," a Wheeler County Sheriff's Deputy spotted the manager's car traveling away from the scene on the access road to Interstate 40. After a short chase, the deputy pulled appellant over. As the deputy exited his patrol car, appellant backed the stolen car into the patrol car and then sped off down a dirt road, leaving the deputy unable to continue the pursuit. The store manager's car was later discovered in a barn several miles down the road with $124.00 in cash scattered inside the passenger compartment, along with a brown paper "Puckett's Food Stores" sack. Appellant was nowhere to be found.

The armed robbery was the "talk of the town" in both the community of Shamrock, and Wheeler County generally, and over the next several days a manhunt ensued involving 20 to 30 officers from various law enforcement agencies. On New Years Day 1997, two days after the robbery, a local stockman, while feeding cattle, discovered appellant in his fenced pasture laying on the ground under a clump of trees beside some Shinnery bushes, several miles from where the store manager's car had been abandoned. The stockman, aware of the armed robbery and ongoing manhunt, was startled by appellant's presence. The two men spoke briefly to each other, culminating in the stockman telling appellant that he wanted him to leave. As appellant gathered his belongings, the stockman walked back to his pickup truck to radio the police and retrieve his firearm.

Law enforcement authorities responded to the call, but were unable to locate appellant in the pasture. Later that afternoon however, the stockman, still out on his lease, again discovered appellant laying in the grass. This time, the stockman held appellant at gunpoint, made it clear that he would shoot appellant if he ran, and directed him to step away from his belongings and over a barbed wire fence. After appellant complied with his demands, the stockman radioed law enforcement officials. Minutes later, the local game warden arrived on the scene and took appellant into custody. When arrested, appellant was wearing a shirt bearing the words "Oklahoma Corrections," and was in possession of a sawed-off .22 caliber rifle, six rounds of ammunition and over $3,600.00 in cash.

By four points of error, appellant contends the trial court committed reversible error in: (1) denying his motion to suppress evidence (the sawed-off .22 caliber rifle, the six rounds of ammunition, and the $3,600.00 in cash) obtained as a result of an illegal citizen's arrest, (2) denying his motion to transfer venue due to community prejudice against him, (3) admitting extraneous offense evidence against him, and (4) denying his requested instruction on illegal citizen's arrest and the requisite exclusionary instruction provided for under Texas Code of Criminal Procedure article 38.23.[3] Appellant does not challenge the sufficiency of the evidence.

## VENUE

By his second point of error, appellant contends the trial court erred in denying his motion to change venue because so great a prejudice existed against him in Wheeler County that he could not get a fair and impartial trial. In support of his contention, he points to Shamrock and Wheeler County newspaper articles printed before trial which conclude, without alleging, that appellant was guilty of the charged offenses. In addition, he asserts, as he did at the trial court, that because the crimes were the "talk of the town," and that because Shamrock and Wheeler County are both small areas with only 2,000 and 5,500 people respectively, that a fair and impartial jury could not be impaneled.

At a pretrial hearing, appellant proffered the testimony of two local attorneys, both of whom testified that due to the nature of the

---

**3.** The State has not favored this Court with a brief, so we are unaware of its position with respect to these contentions.

offense, the small number of people in the county, and the pretrial publicity, that appellant could not get a fair trial. In response, the State called six residents of Wheeler County all of whom testified that appellant could get a fair and impartial trial. The trial court thereafter denied the motion to change venue.

 On appeal from a trial court's ruling on a request to change venue, this Court employs an abuse of discretion standard of review. *McGinn v. State*, 961 S.W.2d 161, 163 (Tex.Cr.App.1998). The trial court's decision will not be reversed on appeal if it is within the realm of reasonableness given the record before us. *Id.* At the venue hearing, appellant bore the heavy burden of affirmatively proving the existence in the community of such prejudice that the likelihood of obtaining a fair and impartial trial was doubtful. *Beets v. State*, 767 S.W.2d 711, 743 (Tex.Cr.App.1987). Absent such a showing, the trial court cannot be said to have abused its discretion. *Ransom v. State*, 789 S.W.2d 572, 579 (Tex.Cr.App.1989). In reviewing the testimony adduced at the hearing, as well as the jury voir dire, the record supports the trial court's decision to deny appellant's motion to change venue. Because no abuse of discretion is revealed in the record, appellant's second point of error is overruled.

## MOTION TO SUPPRESS EVIDENCE

### AND REQUESTED INSTRUCTION

By his first and fourth points of error, appellant contends the trial court erred in denying: (1) his motion to suppress the sawed-off .22 caliber rifle, six .22 caliber rounds, and the $3,600.00 in cash seized from his person pursuant to an illegal citizen's arrest, and (4) his requested instruction to the jury on their ability to disregard evidence which they determined was seized in violation of article 38.23(a) of the Code of Criminal Procedure. In addressing these points, we have set forth the law pertaining to the admission of, and jury charges surrounding, illegally obtained evidence.

 Under article 38.23(a) of the Code of Criminal Procedure:

(a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

Tex.Code Crim. Proc. Ann. art. 38.23(a) (Vernon Supp.1998). This statute prohibits the admission of evidence illegally obtained by law enforcement officials and private individuals alike. *State v. Johnson*, 939 S.W.2d 586, 587 (Tex.Cr.App.1996). Therefore, in order to determine the admissibility of the complained of evidence, we must determine whether it was seized as a result of an illegal arrest.

 An arrest does not require the actual physical taking into custody, but occurs at the moment a person's liberty of movement is restricted or restrained. *Amores v. State*, 816 S.W.2d 407, 411 (Tex.Cr.App.1991); *Hoag v. State*, 728 S.W.2d 375, 379 (Tex.Cr.App.1987); *Wilson v. State*, 943 S.W.2d 43, 45 (Tex.App.—Tyler 1996, pet'n ref'd); *Knot v. State*, 853 S.W.2d 802, 805 (Tex.App.—Amarillo 1993, no pet'n). The record evidence from both the pretrial hearing, and again at trial, establishes that when the stockman first found appellant he asked him to leave the premises. The second time he found him, and with the intent to restrain him of his liberty, the stockman held appellant at gunpoint. The stockman conveyed to appellant that he would shoot him if he ran, and appellant complied with the stockman's instructions to step away from his belongings and climb over a barbed wire fence. The evidence therefore indicates that appellant was arrested by the stockman. Having determined that a citizen's arrest was made, we now address the issue of whether the arrest was legal.

 Under Texas law, a private citizen may arrest another person, without a war-

rant, only for a felony or a breach of the public peace committed in his presence or within his view. Tex.Code Crim. Proc. Ann. art. 14.01(a) (Vernon 1977). The stockman testified that he was not a witness to the charged offenses; he never observed appellant brandish a weapon, and appellant made no threatening gestures toward him. However, the stockman was acutely aware of the recent armed robbery and ongoing manhunt. More importantly however, the stockman discovered appellant on private property leased by the stockman, within an area fenced to contain livestock, and the stockman effectuated the arrest of appellant after he had encountered him earlier in the day and asked him to leave. Since no culpable mental state is required to establish criminal trespassing, appellant's mere presence on the property, given the statutory notice requirements, constituted a trespass. Tex. Penal Code Ann. § 30.05 (Vernon 1994 & Supp.1998); *Brumley v. State*, 804 S.W.2d 659, 662 (Tex.App.—Amarillo 1991, no pet'n).

Having determined that appellant was trespassing when arrested by the stockman, we must determine whether remaining on fenced pasture after having been requested to leave is a breach of the peace, because, as previously noted, in order for the stockman to have effectuated a legal arrest, appellant would have had to have committed a breach of the peace within the stockman's view. In *Woods v. State*, 152 Tex.Crim. 338, 213 S.W.2d 685, 687 (1948) the Court of Criminal Appeals, quoting extensively from *Head v. State*, 131 Tex.Crim. 96, 96 S.W.2d 981, 982 (1936), wrote:

The term "breach of the peace" is generic, and includes all violations of the public peace or order, or decorum; in other words, it signifies the offense of disturbing the public peace or tranquility enjoyed by the citizens of a community; a disturbance of the public tranquility by any act or conduct inciting to violence or tending to provoke or excite others to break the peace; a disturbance of public order by an act of violence, or by any act likely to produce violence, or which, by causing consternation and alarm disturbs the peace and quiet of the community. By "peace,"

as used in this connection, is meant the tranquility enjoyed by the citizens of a municipality or a community where good order reigns among its members. Breach of the peace is a common-law offense. It has been said that it is not a specific offense, yet it may be, and at times is, recognized as such by statute or otherwise; and only when so regarded will it be considered in this article.

The offense may consist of acts of public turbulence or indecorum in violation of the common peace and quiet, of an invasion of the security and protection which the laws afford to every citizen, or of acts such as tend to excite violent resentment or to provoke or excite others to break the peace. Actual or threatened violence is an essential element of a breach of the peace. Either one is sufficient to constitute the offense. Accordingly, where means which cause disquiet and disorder, and which threaten danger and disaster to the community, are used, it amounts to a breach of the peace, although no actual personal violence is employed. Where the incitement of terror or fear of personal violence is a necessary element, the conduct or language of the wrongdoer must be of a character to induce such a condition in a person of ordinary firmness.

The determination of whether a given act or state of conduct amounts to a breach of the peace is done on a case-by-case basis. *Woods v. State*, 213 S.W.2d at 687; *Turner v. State*, 901 S.W.2d 767, 770 (Tex.App.—Houston [14th Dist.] 1995, pet'n ref'd). In *Estes v. State*, 660 S.W.2d 873 (Tex.App.—Fort Worth 1983, pet'n ref'd) the court found a breach of the peace when a high school student extended his middle finger to the principal during commencement exercises. In addition, being drunk and disorderly, *Heck v. State*, 507 S.W.2d 737 (Tex.Cr.App.1974), and driving while intoxicated, *Romo v. State*, 577 S.W.2d 251 (Tex.Cr.App. [Panel Op.] 1979), have both been held to be breaches of the peace. Moreover, failure to stop and give information following a traffic accident has also been held to be a breach of the peace. *Crowley v. State*, 842 S.W.2d 701, 704 (Tex. App.—Houston [1st Dist.] 1992, no pet'n).

While we recognize that in other situations, and under former statutes, trespassing may not constitute a breach of the peace, *cf. Heath v. Boyd*, 141 Tex. 569, 175 S.W.2d 214, 216 (1943), given the specific facts of this case, we hold that appellant committed a breach of the peace within the stockman's presence. Appellant was criminally trespassing, for he had previously been asked to leave, and the stockman's land was fenced to contain livestock. *See* Tex. Penal Code Ann. § 30.05 (Vernon 1994 & Supp. 1998). When the stockman discovered appellant the second time that day, he was aware of a recent armed robbery and the ongoing manhunt for a wanted fugitive, and appellant was actively concealing his presence by laying low in the brush. Given the facts, appellant's attempt to conceal his presence on the private property of another, during the course of a manhunt for an armed fugitive, constituted an "invasion of the security and protection which the laws afford every citizen" and rose to the level of "threatened violence."

Since, in light of the particular facts surrounding this case, appellant's trespassing constituted a breach of the peace, the citizen's arrest was lawful. Consequently, the trial court did not err in failing to grant appellant's motion to suppress. In addition, since no evidence contradictory to the stockman's testimony was introduced at trial regarding the legality of the evidence seized, the trial court did not err in refusing to submit appellant's proffered jury instruction under article 38.23. *Cf. Knot v. State*, 853 S.W.2d 802 (Tex.App.—Amarillo 1993, no pet'n). Appellant's first and fourth points of error are overruled.

## EXTRANEOUS OFFENSE EVIDENCE

By his third point of error, appellant contends the trial court erred in allowing the State to admit into evidence, over his timely 403 and 404(b) objections, the "Oklahoma Corrections" shirt he was wearing when apprehended, and an Oklahoma pen packet revealing, among others things, two prior robbery with a firearm convictions. *See* Texas Rules of Criminal Evidence 403 and 404(b).

The rules of evidence allow the trial court wide discretion in determining the admissibility of evidence. *Dorsett v. State*, 761 S.W.2d 432, 433 (Tex.App.—Houston [14th Dist.] 1988, pet'n ref'd). We review the trial court's evidentiary rulings under an abuse of discretion standard, and so long as the trial court's rulings are within the "zone of reasonable disagreement," we will not intercede. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Cr.App.1990).

Here, the State offered the "Oklahoma Corrections" shirt worn by appellant to establish his motive. In other words, because appellant was an escaped convict, he was a desperate man on the run, without a job, and in need of cash. Once the State introduced the shirt, it then offered the Oklahoma pen packet to illustrate to the jury why appellant was previously incarcerated.

Having reviewed the trial court's decision to admit the "Oklahoma Corrections" shirt in light of *Montgomery*, we find that the shirt was arguably admissible to establish motive and, therefore, the trial court's ruling was within the "zone of reasonable disagreement." In other words, it had relevance beyond mere character conformity. Furthermore, judged in accordance with the relevant criteria set forth in *Montgomery*, its probative value was not substantially outweighed by the danger of unfair prejudice. Consequently, the trial court did not err in allowing its introduction. *Montgomery v. State*, 810 S.W.2d at 391–92.

The Oklahoma pen packet on the other hand had no relevance apart from character conformity and was therefore inadmissible. Resultantly, the trial court had no discretion to admit it. *Montgomery v. State*, 810 S.W.2d at 391. However, having found the admission of the pen packet to be error, we hold that it was harmless error because it neither interfered with the fairness of the proceeding, nor contributed to the conviction. Tex.R.App. P. 81(b)(2); *Burks v. State*, 876 S.W.2d 877, 905 (Tex.Cr.App.1994); *Harris v. State*, 790 S.W.2d 568, 587–88 (Tex.Cr.App. 1989). Appellant's fourth point of error is overruled.

Having overruled all four points of error, the judgments are accordingly affirmed.