Affirmed and Opinion filed July 31, 2008








Affirmed and Opinion filed
July 31, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-00056-CV

_______________

 

CARLOS CHAPA and MARIA CHAPA, Individually and as Next
Friend of CARLOS CHAPA, JR. and ALEX CHAPA, MINORS, Appellants

 

V.

 

TRACIERS & ASSOCIATES, INCORPORATED; TRACIERS
& ASSOCIATES; TRACIERS; PAUL CHAMBERS; and FORD MOTOR CREDIT CORP.,
Appellees

                                                                                                                                                

On Appeal from the 164th District Court

 Harris County, Texas

Trial Court Cause No. 2003-48619

                                                                                                                                               


 

O P I N I O N








In this
appeal, we must determine whether appellants, the parents of two young
children, have legally cognizable claims for mental anguish allegedly sustained
when a repossession agent towed their vehicle out of sight before he realized
their children were inside.  The parents filed suit against the financing
company, the repossession company it hired, and the repossession agent who
towed the vehicle.  They asserted claims for mental anguish and its physical
manifestations under (a) section 9.609 of the Business and Commerce Code,
(b) the Restatement (Second) of Torts, or (c) negligence law,
including the law governing bystander claims.  The trial court granted summary
judgment for the defendants on the parents= claims.  Neither parent witnessed
the vehicle being towed from the street, and the repossession agent discovered
the children and returned them and the vehicle within minutes.  On these facts,
we conclude that, as a matter of law, appellants Carlos and Maria Chapa do not
have a viable claim for breach of the peace under section 9.609 of the Business
and Commerce Code.  We further hold that the financing company and its agents
are not liable to the Chapas under sections 424 or 427 of the Restatement
(Second) of Torts.  Moreover, we conclude Maria Chapa=s bystander and other negligence
claims fail as a matter of law.  We therefore affirm the trial court=s grant of summary judgment.

I.  Factual and Procedural Background[1]

Ford
Motor Credit Corp. (AFMCC@) hired Traciers & Associates (ATraciers@)[2]
to repossess a white 2002 Ford Expedition owned by Marissa Chapa, who was in
default on the associated promissory note.  Traciers assigned the job to its
field manager, Paul Chambers, and gave him an address where the vehicle could
be found.  FMCC, Traciers, and Chambers were unaware that the address was that
of Marissa=s brother, Carlos Chapa.  Coincidentally, Carlos and his wife Maria Chapa
also had purchased a white Ford Expedition financed by FMCC.  Their vehicle,
however, was a 2003 model, and the Chapas were not in default.

On the
night of February 6, 2003, Chambers went to the address and observed a white
Ford Expedition.  The license number of the vehicle did not match that of the
vehicle he was 








told to repossess, and he
did not see the vehicle=s vehicle identification number (AVIN@), which was obscured. Chambers
returned early the next morning and still could not see the Expedition=s VIN.  He returned to his own
vehicle, which was parked two houses away.  

Unseen
by Chambers, Maria Chapa left the house and helped her two sons, ages ten and
six, into the Expedition for the trip to school.  Her mother-in-law=s vehicle was parked behind her, so
Maria backed her mother-in-law=s vehicle into the street, then backed her Expedition out of
the driveway and parked on the street.  She left the keys to her truck in the
ignition with the motor running while she parked her mother-in-law=s car back in the driveway and
reentered the house to return her mother-in-law=s keys. 

After Chambers
saw Maria park the Expedition on the street and return to the house, it took
him only thirty seconds to back his tow truck to the Expedition, hook it to his
truck, and drive away.  Chambers did not leave his own vehicle to perform this
operation, and it is undisputed that he did not know the Chapa children were
inside.[3]  When Maria
emerged from the house, the Expedition, with her children, was gone.  Maria
began screaming, telephoned 911, and called her husband at work to tell him the
children were gone.  

Meanwhile,
on an adjacent street, Chambers noticed that the Expedition=s wheels were turning, indicating to
him that the vehicle=s engine was running.  He stopped the tow truck and heard a
sound from the Expedition.  Looking inside, he discovered the two Chapa
children.  After he persuaded one of the boys to unlock the vehicle, Chambers
drove the Expedition back to the Chapas= house.  He returned the keys to
Maria, who was outside her house, crying.  By the time emergency personnel and
Carlos Chapa arrived, the children were back home and Chambers had left the
scene. 








Maria
testified that the incident caused her to have an anxiety attack, including
chest pain and numbness in her arm.  She states she has continued to experience
panic attacks and has been diagnosed with an anxiety disorder.  In addition,
both Carlos and Maria have been diagnosed with post-traumatic stress disorder.

Acting
individually and on behalf of their children, Carlos and Maria Chapa sued
Traciers, Chambers, and FMCC.  Appellees settled the children=s claims but contested the individual
claims of Carlos and Maria.  The trial court granted summary judgment on the
parents= claims in favor of Traciers,
Chambers, and FMCC, and this appeal ensued.

II.  Issues Presented

The
Chapas present three compound issues for review.  In their first issue, they
contend that they have legally cognizable causes of action against Traciers and
FMCC for the physical and psychological injuries they sustained as a result of
the appellees= breach of the duties imposed by (a) section 9.609 of the Texas
Business and Commerce Code, (b) the Restatement (Second) of Torts, or (c)
the common law governing negligence claims generally.  In their second issue,
the Chapas argue that, as a bystander, Maria suffered compensable injuries
arising from the tort committed against her children.  Finally, the Chapas
assert in their third issue that the trial court erred in granting summary judgments
dismissing their claims.

III.  Standard of Review








We
review summary judgments de novo,[4] and where the
trial court grants the judgment without specifying the grounds, we affirm the
summary judgment if any of the grounds presented are meritorious.  FM
Props.  Operating Co. v. City of Austin, 22 S.W.3d 868, 872B73 (Tex. 2000).  We consider all
grounds the appellant preserves for review that are necessary for final
disposition of the appeal.  See Cincinnati Life Ins. Co. v. Cates, 927
S.W.2d 623, 626 (Tex. 1996).  Here, appellees moved for summary judgment on
both traditional and no‑evidence grounds;[5]
thus, we apply the familiar standard of review appropriate for each type of
summary judgment, taking as true all evidence favorable to the nonmovant, and
indulging every reasonable inference and resolving any doubts in the nonmovant=s favor.  See Joe v. Two Thirty
Nine Joint Venture, 145 S.W.3d 150, 157 (Tex. 2004) (traditional summary
judgment); King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003)
(no‑evidence summary judgment).

IV.  Analysis

A.        Section
9.609 of the Texas Business and Commerce Code

The
Chapas first argue that the trial court erred in granting summary judgment
against them on their claim that appellees are liable under section 9.609 of
the Business and Commerce Code.  This statute provides in pertinent part:

(a)       After default, a secured party:

(1)       may take possession of the collateral;

. . .

(b)       A secured party may proceed under Subsection
(a):

. . .

(2)       without judicial process, if it proceeds without breach of
the peace.








Tex.
Bus. & Com. Code Ann.
' 9.609 (Vernon 2002).  The Chapas
correctly point out that this statute imposes a duty on secured creditors to
take precautions for public safety when repossessing property.  See Mbank El
Paso, N.A. v. Sanchez, 836 S.W.2d 151, 153 (Tex. 1992) (interpreting
predecessor statute).  Thus, the creditor who elects to pursue nonjudical
repossession assumes the risk that a breach of the peace might occur.  Id. at
154.  A secured creditor Aremains liable for breaches of the peace committed by its
independent contractor.@  Id. (citing Restatement
(Second) of Torts, Precautions Required by Statute or Regulation, ' 424 (1965)).  Thus, a creditor
cannot escape liability by hiring an independent contractor to repossess
secured property.  

The
Chapas assert that FMCC and Traciers, who employed Chambers as a repossession
agent, are liable for any physical or mental injuries sustained by Carlos and
Maria as a result of Chambers=s breach of the peace.  But this argument presupposes that a
breach of peace occurred.  Although the material facts regarding Chambers=s conduct are not in dispute,
appellees deny that his conduct constituted a breach of the peace and moved for
no-evidence summary judgment on the ground that no such breach occurred.  If
appellees are correct, then we may affirm summary judgment on the claims
asserted under section 9.609 without further analysis.  See Tex. R. App. P. 47.1.  

In their
arguments concerning breach of the peace and its associated liability, the
Chapas rely most heavily on authorities addressing breaches of the peace under
Texas criminal law and cases from other jurisdictions discussing breaches of
the peace under the Uniform Commercial Code.  Because a breach of the peace
under the criminal code would also constitute a breach of the peace under the
Uniform Commercial Code, we address both sources of authority.

1.         Breach of the Peace Under
Criminal Law 

In
support of their argument that Chambers breached the peace, the Chapas rely on
the following language from Corpus Juris, adopted by the Texas Court of
Criminal Appeals in 1936:








The term >breach of the peace= is
generic, and includes all violations of the public peace or order, or decorum;
in other words, it signifies the offense of disturbing the public peace or
tranquillity enjoyed by the citizens of a community; a disturbance of the
public tranquillity by any act or conduct inciting to violence or tending to
provoke or excite others to break the peace; a disturbance of public order by
an act of violence, or by any act likely to produce violence, or which, by
causing consternation and alarm disturbs the peace and quiet of the community. 
By >peace,= as used in
this connection, is meant the tranquillity enjoyed by the citizens of a
municipality or a community where good order reigns among its members. Breach
of the peace is a common-law offense.  It has been said that it is not a
specific offense, yet it may be, and at times is, recognized as such by statute
or otherwise; and only when so regarded will it be considered in this article.

The offense may consist of acts of public turbulence or indecorum in
violation of the common peace and quiet, of an invasion of the security and
protection which the laws afford to every citizen, or of acts such as tend to
excite violent resentment or to provoke or excite others to break the peace. 
Actual or threatened violence is an essential element of a breach of the
peace.  Either one is sufficient to constitute the offense.  Accordingly, where
means which cause disquiet and disorder, and which threaten danger and disaster
to the community, are used, it amounts to a breach of the peace, although no
actual personal violence is employed.  Where the incitement of terror or fear
of personal violence is a necessary element, the conduct or language of the
wrongdoer must be of a character to induce such a condition in a person of
ordinary firmness.

Head v. State, 131 Tex. Crim. 96, 99, 96 S.W.2d
981, 982B83 (1936) (on mot. for reh=g).  As further explained in Corpus
Juris Secondum, A[t]he acts involved, to constitute a breach of the peace,
must also be voluntary, unnecessary, and contrary to ordinary human conduct.@  11 C.J.S. Breach of the Peace
' 4 (1995).








The
Chapas argue that Chambers=s conduct is of the type that has been found to constitute a
breach of peace under Texas criminal law.[6] 
Without further explanation, the Chapas assert that A[t]he act of taking children from the
possession of their mother which leaves her in a hysterical crying state, is
clearly a breach of peace.@

2.         Criminal Breach of the
Peace Distinguished








Whether
a specific act constitutes a breach of the peace depends on the surrounding
facts and circumstances in the particular case.  Miles v. State, 241
S.W.3d 28, 40 (Tex. Crim. App. 2007) (citing Woods v. State, 152 Tex.
Crim. 338, 341, 213 S.W.2d 685, 687 (1948)).  But in each of the cases on which
the Chapas rely, the described conduct falls within the proscription adopted in
Head v. State.  Conduct such as driving while intoxicated,[7]
or publicly assaulting someone without provocation, with or without a weapon,[8]
poses an immediate threat of violent physical injury.[9] 
Fleeing the scene of an accident[10] or
attempting concealment on private property during a manhunt[11]
are acts that invade Athe security and protection which the laws afford to every
citizen.@  See id.  The public use of
verbally abusive language that is Acalculated to disturb@ others is an act of Apublic indecorum@ that is intended to disrupt the
public peace or tranquility.[12]  Finally,
all of these acts are Avoluntary, unnecessary, and contrary to ordinary human
conduct.@  See 11 C.J.S. Breach of the
Peace ' 4 (1995).

In
contrast, here the parties do not assert that Chambers behaved violently or
threatened physical injury to anyone.  Cf. id. (A[A]ctual or threatened violence is an
essential element of a breach of the peace. . . .@).  Further, it is undisputed that
Chambers did not know the children were in the vehicle when he moved it; thus,
his actions cannot be appropriately characterized as Acontrary to ordinary human conduct.@  Cf. id.  When Chambers
learned of the children=s presence, he immediately ceased any attempt to repossess
the vehicle and instead drove the children home.[13] 
He did not communicate by word or gesture with Carlos 








or Maria Chapa before or
during the attempted repossession.  Cf. Coggin v. State, 123 S.W.3d 82,
92 (Tex. App.CAustin 2003) (suggesting that conduct that would Aincite an immediate breach of the
peace contemplates a face-to-face encounter@).  

In sum,
the Chapas do not argue that Chambers=s words or behavior toward the
children or anyone else were intimidating, indecorous, or calculated to have a
disturbing effect.  Cf. Heath v. Boyd, 141 Tex. 569, 573, 175
S.W.2d 214, 216 (1943) (concluding that appellant who did not exhibit a weapon,
Ayell, shriek, curse, abuse or
threaten anybody, or commit any other act denounced as a breach of the peace@ by statute did not breach peace). 
On these facts, we cannot say that Chambers=s conduct constitutes a Abreach of the peace@ as that phrase ordinarily is used in
criminal or common law.

3.         Breach of the Peace under
the Uniform Commercial Code








The
Chapas also rely on cases from other jurisdictions specifically addressing
breaches of the peace as described in the Uniform Commercial Code concerning
repossession of property.  They cite Robinson v. Citicorp National Services,
Inc., a Missouri case in which Clarence Robinson defaulted on his
automobile payments.  921 S.W.2d 52, 53 (Mo. Ct. App. 1996).  Agents of the
financing company=s assignee attempted to repossess the car from property owned
by Marie Robinson.  Id.  Marie=s  husband, Odell Robinson, Sr., Atold [a repossession agent] to get
off the property numerous times to no avail.  The alleged trespass and
breach of peace ensued, and Odell suffered a heart attack and died.@  Id. (emphasis added).  This
case stands for the proposition that the duty to avoid a breach of peace is
non-delegable, but the conduct constituting a breach of the peace is not
described.[14]  We can
determine only that there was a confrontation on the appellant=s property between repossession
agents and a person objecting to the repossession.  Here, however, Chambers
removed the vehicle without confrontation and without trespassing on the Chapas= premises.

The
Chapas also point to Nixon v. Halpin.  620 So. 2d 796 (Fla. Dist. Ct.
App. 1993).  In that case, Halpin, a repossession agent, was seen by the
vehicle=s owner and mistaken for a car
thief.  Id. at 797.  The car=s owner summoned his office mate,
Nixon, and the two men attempted to detain Halpin.  Id.  While driving
away, Halpin struck Nixon.  Id.  The Nixon court concluded that
the vehicle owner had a right to object to the attempted repossession.  Id. at
798.  It further held that if the creditor Ahad not already peaceably removed the
vehicle when the owner objected, it=s [sic] continuation with the attempt
at repossession was no longer >peaceable and without a breach of the peace.=@ Id.  In this case, however,
the repossession agent had Aalready peaceably removed the vehicle@ and did not continue to attempt
repossession after he learned of the Chapa children=s presence.  Thus, the reasoning in Nixon
supports the conclusion that Chambers did not breach the peace.[15]
 

4.         UCC
Usage Distinguished








Most
frequently, the expression Abreach of the peace@ as used in the Uniform Commercial
Code Aconnotes conduct that incites or is
likely to incite immediate public turbulence, or that leads to or is likely to
lead to an immediate loss of public order and tranquility.@  Johnson v. Grossinger Motorcorp,
Inc., 753 N.E.2d 431, 440 (Ill. App. Ct. 2001); see also Madden v. Deere
Credit Servs., Inc., 598 So. 2d 860, 865 (Ala. 1992) (A[S]ecured creditor, in exercising
privilege to enter upon premises of another to repossess collateral, may not
perpetrate >[a]ny act or action manifesting force or violence, or naturally
calculated to provide a breach of peace= (quoting Crews & Green v.
Parker, 68 So. 287, 288 (Ala. 1915))); Salisbury Livestock Co. v. Colo.
Cent. Credit Union, 793 P.2d 470, 474 n.3 (Wyo. 1990) (A[A]lthough actual violence is not
required to find >breach of the peace,= within meaning of self‑help
repossession statute, disturbance or violence must be reasonably likely, and
not merely a remote possibility.@); cf. Ash v. Peoples Bank
of Greensboro, 500 So. 2d 5, 6B7 (Ala. 1986) (no breach of peace
when vehicle repossessed from public street while debtor inside house).  In
addition, A[b]reach of the peace . . . refers to conduct at or near and/or incident
to seizure of property.@  Jordan v. Citizens & S. Nat=l Bank of South Carolina, 298 S.E.2d 213, 214 (S.C. 1982); see
also Census Fed. Credit Union v. Wann, 403 N.E.2d 348, 351B52 (Ind. Ct. App. 1980) (A[E]ven in attempted repossession of a
chattel off a street, parking lot or unenclosed space, if repossession is
verbally or otherwise contested at actual time of and in immediate vicinity of
attempted repossession by defaulting party or other person in control of
chattel, secured party must desist and pursue his remedy in court.@).

Here,
there is no evidence that Chambers proceeded with the attempted repossession
over an objection communicated to him at, near, or incident to the seizure of
the property.  To the contrary, Chambers immediately Adesisted@ repossession efforts and peaceably
returned the vehicle and the children when he learned of their presence. 
Moreover, Chambers actively avoided confrontation.  By removing an apparently
unoccupied vehicle from a public street when the driver was not present, he
reduced the likelihood of violence or other public disturbance.








In sum,
the Chapas have not identified and we have not found any case in which the
repossession of a vehicle from a public street, without objection or
confrontation, has been held to constitute a breach of the peace.  Cf. Wallace
v. Chrysler Credit Corp., 743 F. Supp. 1228, 1231B33 (W.D. Va. 1990) (deputy sheriff
did not breach the peace when he repossessed debtor=s truck because, even if he violated
traffic regulation when he drove away, he did so before debtor had an
opportunity to confront him); Wann, 403 N.E.2d at 351B52 (no breach of the peace occurred
when repossession from parking lot was not verbally or otherwise contested). 
We therefore conclude that Chambers=s conduct did not violate a duty
imposed by section 9.609 of the Texas Business and Commerce Code.[16]

B.        Restatement (Second) of
Torts

The
Chapas also contend that appellees violated duties owed to them under two
provisions of the Restatement (Second) of Torts.  On this record, however, we
conclude that neither section applies.

1.         Section
424

Section
424 of the Restatement (Second) of Torts provides as follows:

One who by
statute or by administrative regulation is under a duty to provide specified
safeguards or precautions for the safety of others is subject to liability to
the others for whose protection the duty is imposed for harm caused by the
failure of a contractor employed by him to provide such safeguards or
precautions.








Restatement
(Second) of Torts, Precautions Required by Statute or Regulation, ' 424 (1965)).  This provision
permits a plaintiff to hold an entity vicariously liable for the acts of that
entity=s independent contractors.  The
Chapas argue that because section 9.609 of the Business and Commerce Code
imposed a duty on Chambers to refrain from breaching the peace, Traciers and
FMCC are liable for Chambers=s violation of that duty.  But because Chambers did not
breach the peace, this provision is inapplicable.

2.         Section 427

The Chapas additionally assert that Traciers and FMCC also
may be liable under section 427 of the Restatement (Second) of Torts.  Under
this provision, an
employer is liable for physical harm caused by an independent contractor=s performance of inherently dangerous
work:

One who
employs an independent contractor to do work involving a special danger to
others which the employer knows or has reason to know to be inherent in or
normal to the work, or which he contemplates or has reason to contemplate when
making the contract, is subject to liability for physical harm caused to such
others by the contractor=s failure to take reasonable precautions against such
danger. 

Lee Lewis Constr.,
Inc. v. Harrison, 70
S.W.3d 778, 794 n.36 (quoting Restatement
(Second) of Torts ' 427 (1965)).  Such inherently dangerous activities are Athose that are dangerous in their
normal, nondefective state.@  Cent. Ready Mix Concrete Co., Inc. v. Islas, 228
S.W.3d 649, 652B53 (Tex. 2007).  

The
Chapas reason that nonjudicial repossession is an inherently dangerous
activity, and thus, FMCC and Traciers are liable for Chambers=s failure to take precautions to
prevent their injuries.  In support of this argument, the Chapas point to Sanchez
v. Mbank of El Paso, in which the Eighth Court of Appeals, relying on
section 427 of the Restatement, held that nonjudicial repossession is
inherently dangerous.  792 S.W.2d 530, 531B32 (Tex. App.CEl Paso 1990), aff=d on other grounds, 836 S.W.2d 151, 152 n.2 (Tex.
1992).  In reaching this conclusion, the court reasoned as follows:








Since there is likelihood that the repossessor will commit a technical
trespass by entering upon someone else=s property to take possession of the collateral and that
the repossession will be done not only without the owner=s consent but in many cases against
his will, there is a considerable risk that a breach of the peace, assault or
worse may occur.

Id. at 532.       

Section
427, however, imposes liability only for (a) physical harm (b) caused
by the failure to take reasonable precautions against the inherent dangers of
the work.  As previously discussed, however, no breach of the peace occurred in
this case, and there is no allegation of assault.  Contrary to the Chapas= characterizations on appeal, FMCC
and Traciers did not physically harm them; rather, the Chapas allegedly
sustained mental and emotional harm and physical manifestations of anxiety,
depression, and post-traumatic stress disorder.[17] 
These physical manifestations appear to be part of their asserted
mental-anguish damages.  See City of Tyler v. Likes, 962 S.W.2d 489, 496
(Tex. 1997) (noting that mental-anguish damages are generally available if the
harm arises from bodily injury, intentional or malicious conduct, knowing
violation of a statute, breach of a duty arising out of a special relationship,
or an injury of such shocking or disturbing nature that mental anguish is
highly foreseeable).  Moreover, their injuries are not the result of a failure
to take reasonable precautions against those risks identified in Sanchez
as dangers inherent in nonjudicial repossession.[18]









The
claims of Carlos and Maria Chapa do not fall within those described in Likes,
but instead more closely resemble a common-law claim of negligent infliction of
emotional distress.  This tort consists of Amental or emotional harm (such as
fright or anxiety) that is caused by the negligence of another and that is not
directly brought about by a physical injury, but that may manifest itself in
physical symptoms.@  Consol. Rail Corp. v. Gottshall, 512 U.S. 532, 544,
114 S. Ct. 2396, 2405, 129 L. Ed. 2d 427 (1994).  With limited exceptions,
claims of negligent infliction of emotional distress are not recognized under
Texas law.  Boyles v. Kerr, 855 S.W.2d 593, 594 (Tex. 1993) (op. on mot.
for reh=g) (A[T]here is no general duty in Texas
not to negligently inflict emotional distress.  A claimant may recover mental
anguish damages only in connection with defendant=s breach of some other legal duty.@).  And although the Chapas argue
that their physical manifestations of emotional distress are distinct physical
injuries, the cases on which they rely do not support recovery for such
physical manifestations under section 427 and are otherwise distinguishable on
the facts.[19]       

Because
the Chapas= claims consist of negligently inflicted mental anguish and its physical
manifestations, we conclude that neither section 427 of the Restatement nor
general negligence law supports the Chapas= claims.  We therefore overrule the
Chapas= first issue.








C.        Bystander Claim

A
bystander claim falls within an exception to the general rule barring recovery
for negligent infliction of emotional distress.  Cavanaugh v. Jones, 863
S.W.2d 551, 554 (Tex. App.CAustin 1993, writ denied) (bystander theory of recovery is
one type of claim of negligent infliction of emotional distress).  Under this
legal theory, mental-anguish damages are recoverable for the contemporaneous
sensory perception of a serious or fatal injury to a close relative.  Boyles,
855 S.W.2d at 597B98.  When the material facts are undisputed, the question of
whether a plaintiff is entitled to recover as a bystander is a question of
law.  United Servs. Auto. Ass=n v. Keith, 970 S.W.2d 540, 542 (Tex. 1998)
(per curiam).  

To
determine whether a plaintiff has a valid bystander claim, courts consider:

(1)       Whether the plaintiff was located near the scene of the
accident as contrasted with one who was a distance away from it. 

(2)       Whether the shock resulted from a direct emotional impact
upon the plaintiff from the sensory and contemporaneous observance of the
accident, as contrasted with learning of the accident from others after its
occurrence. 

(3)       Whether the plaintiff and the victim were closely related, as
contrasted with an absence of any relationship or the presence of only a
distant relationship.

Freeman v. City of
Pasadena, 744 S.W.2d
923, 923B24 (Tex. 1988) (adopting the Abystander@ elements set forth in Dillon v.
Legg, 441 P.2d 912, 920 (Cal. 1968)).  Here, the material facts are
undisputed, but the parties disagree about whether these facts satisfy the
second element of the test.








The
Chapas argue that Maria, who was out of sight of the Expedition for only about
30 seconds, was a contemporaneous observer of the Aaccident.@  They further contend that Chambers=s act of removing the vehicle and the
children constituted a continuing tort; thus, Maria=s observation of their absence
renders her a bystander.  See Landreth v. Reed, 570 S.W.2d 486, 490
(Tex. Civ. App.CTexarkana 1978, no writ) (A[A]ctual observance of the accident is
not required if there is otherwise an experiential perception of it, as
distinguished from a learning of it from others after its occurrence.@).  But see Robinson v. Chiarello,
806 S.W.2d 304, 310 (Tex. App.CFort Worth 1991, writ denied) (phrase Acontemporaneous perception of the
accident@ contemplates a sudden and brief
event causing injury).  But on this record and under existing law, we cannot
say that the requirements for bystander recovery have been satisfied.[20] 









In
applying Abystander@ law, Texas courts have implicitly recognized a fundamental
distinction between the perception of circumstances that would strike fear into
the heart of a close family member, and the relative=s first-hand observation that those
fears have been realized.  See, e.g.,  Boyles, 855 S.W.2d at 597B98 (discussing Athe right of bystanders to recover
emotional distress damages suffered as a result of witnessing a serious or
fatal accident) (emphasis added); Gen. Motors Corp. v. Grizzle, 642
S.W.2d 837, 842 (Tex. App.CWaco 1982, writ dism=d) (AA mother may witness a violent
collision in which her child is involved, but if the child emerges unharmed,
there is no sensory perception and no mental injury.@).  This distinction was tacitly
acknowledged before the Texas Supreme Court adopted the current test for
bystander recovery in 1988.[21]  For example,
in City of Austin v. Davis, a father arrived at the hospital where his
neurologically impaired son was a patient and discovered that his son was
missing.  693 S.W.2d 31, 32 (Tex. App.CAustin 1985, writ ref=d n.r.e.).  The patient=s father and the hospital staff
searched the hospital, grounds, and surrounding areas for three hours before
the father discovered his son=s body at the base of ten-story airshaft.  Id. at 32B33.  In recognizing the father=s right to recover as a bystander,
the Third Court of Appeals did not base its decision on the father=s discovery that his son was missing,
but instead relied on the father=s first-hand discovery of his son=s death.  Id. at 34
(explaining that the father Awas intensely involved in the search and subsequent discovery
of his son.  He did not learn of the incident from others, but found his son=s body at the bottom of the airshaft.@); see also  Freeman, 744
S.W.2d at 924 (indicating that a contemporaneous observation includes a parent
who Aexperience[s] the shock of
unwittingly coming upon the accident scene.@). 

Such
cases illustrate the distinction between the perception of circumstances that
would cause a parent intense fear and uncertainty regarding a child=s well-being and actually witnessing
the realization of such fears first-hand.  According to the summary-judgment
evidence, Maria was traumatized because the sight of the empty street caused
her to think her children had been kidnapped or murdered.  But that fear was
not realized: these were not the events that caused the children harm. 
Moreover, Maria was traumatized by that fear as soon as she saw the empty
street regardless of whether her children suffered any harm at all.  Her
distress did not arise from witnessing the children=s serious injury or death, but
instead, resulted from her lack of information as to their location or
condition













Maria
Chapa unquestionably experienced fear and shock when she observed an empty
street where her vehicle should have been.  Although the elements of a
bystander claim are applied flexibly and on a case-by-case basis,[22]
this case presents an important disjunction between the alleged cause of injury
to the primary victimCi.e., the Aaccident@Cand the circumstances observed by the relative.  Texas courts
have reserved recognition of bystander claims for those cases in which the
emotional impact results from a sensory and contemporaneous observance of the
accident that caused the close relative=s harm.  Keith, 970 S.W.2d at
542; cf. Lions Eye Bank v. Perry, 56 S.W.3d 872, 878 (Tex. App.CHouston [14th Dist.] 2001, pet.
denied) (holding family members are not bystanders where they discovered, but
did not witness, the removal of decedent=s eyes).  Here, however, the evidence
is undisputed that  Maria did not Asense@ her children=s serious injury or death; to the
contrary, she admittedly had no knowledge of what had happened to her
vehicle or her children until they were returned.[23] 
Cf. Hewitt, 760 S.W.2d at 334 (holding that parents who Adid not contemporaneously perceive
the injury to their daughter@ are not bystanders).  The requirement that a parent
bystander=s mental anguish Aresult[] from a direct emotional impact upon plaintiff from
the sensory and contemporaneous observance of the accident@[24] necessarily excludes circumstances
in which the parent saw nothing, heard nothing, does not know what happened to
the child, and does not know if the child is injured.[25]
Here, Maria seeks to recover not for a terrible injury to her children that she
witnessed, but for her fear of not knowing where they were or whether they were
seriously injured.  

On this
record, we conclude that the second requirement of the bystander test has not
been satisfied.  Cf. Freeman, 744 S.W.2d at 923B24 (contrasting contemporaneous
observation with Alearning of the accident from others after its occurrence.@).  We therefore overrule the Chapas= second issue.[26]

D.        Global Challenge to Summary
Judgments on Evidentiary Grounds          

In their
third issue, the Chapas assert that the trial court erred in granting
traditional and no-evidence summary judgments dismissing all of Maria and
Carlos Chapa=s claims. They argue there is sufficient evidence to defeat summary
judgment on claims of common-law negligence, negligent hiring, and damages,
including mental anguish and loss of consortium.  In support of these
arguments, the Chapas rely primarily on the same arguments advanced in support
of their theories of liability under the Business and Commerce Code and the
Restatement (Second) of Torts.  As with those claims, the Chapas identify no
injuries that are compensable on this record and under existing law.[27] 
We therefore overrule the Chapas= third issue.








V.  Conclusion

On this
record, the Chapas= claims for mental anguish and its physical manifestations do
not constitute compensable injuries under existing law addressing section 9.609
of the Texas Business and Commerce Code, sections 424 or 427 of the Restatement
(Second) of Torts, or the common-law of negligence, including claims of
bystander injury and negligent hiring.  We therefore affirm the judgment of the
trial court.

 

 

/s/        Eva M. Guzman

Justice

 

Judgment rendered and Opinion filed
July 31, 2008.

Panel consists of Justices Yates,
Guzman, and Brown. 

 









[1]  The following facts are drawn from the
summary-judgment evidence in the record and are not in dispute.





[2]  The Chapas sued entities identified as ATraciers,@ ATraciers & Associates,@ and ATraciers &
Associates, Incorporated.@  We use the term ATraciers@ to refer collectively to all of these entities.  





[3]  Chambers did not see the children in the back seat
through the tinted windows of the Expedition.





[4]  Valence Operating Co. v. Dorsett, 164 S.W.3d
656, 661 (Tex. 2005).





[5]  Eleven original or amended motions for summary
judgment were filed, and the trial court entered eight orders on the various
motions before rendering final judgment disposing of the remaining individual
claims of Carlos and Maria Chapa.  Traciers and Chambers moved for traditional
summary judgment regarding the Chapas=
common-law negligence claims and their entitlement to damages for mental
anguish, and the remaining claims were the subject of motions for no-evidence summary
judgment.





[6]  See, e.g., Romo v. State, 577 S.W.2d
251, 253 (Tex. Crim. App. 1979) (driving while intoxicated); Woods v. State,
152 Tex. Crim. 338, 342, 213 S.W.2d 685, 688 (1948) (AIt is this claimed unprovoked assault by a man upon a
woman in a public place and in the presence not only of her husband but of
others that brings the act of deceased within the definition of a breach of the
peace.@); Leache v. State, 22 Tex. App. 279, 314, 3
S.W. 539, 546 (1886) (AIt is made a disturbance of the peace if one in a
public place, street, or highway, or near a private house, shall use loud and
vociferous language, or swear or curse in a manner calculated to disturb the
inhabitants.@); Dunn v. State, 979 S.W.2d 403, 409 (Tex.
App.CAmarillo 1998, pet. ref=d) (defendant breached peace within arresting citizen=s presence when, after being asked to leave citizen=s private property, defendant attempted to conceal his
presence there during a manhunt for an armed fugitive); Knot v. State,
853 S.W.2d 802, 805 (Tex. App.CAmarillo 1993,
no pet.) (swinging or throwing a beer bottle at another person in a public
place); Crowley v. State, 842 S.W.2d 701, 704 (Tex. App.CHouston [1st Dist.] 1992) (driver who flees the scene
of an accident breaches the peace), pet. ref=d, 830
S.W.2d 613 (Tex. Crim. App. 1992).  The Chapas also cite Meyers v. Ford
Motor Credit Co. for the proposition that unreasonable property damage
constitutes a breach of peace.  619 S.W.2d 572 (Tex. Civ. App.CHouston [14th Dist.] 1981, no writ), abrogated on
other grounds, Qantel Bus. Sys., Inc. v. Custom Controls Co., 761
S.W.2d 302, 304 (Tex. 1988).  In Meyers, however, we were not required
to and did not determine this issue because it was not in dispute.  See id.
at 574 (defendant secured creditor agreed with plaintiff=s contention that breaking into locked garage at 2:00
a.m. and causing substantial damage to garage while removing vehicle would, if
proven, constitute a breach of peace).  But cf. Giese v. NCNB Tex. Forney
Banking Ctr., 881 S.W.2d 776, 783 (Tex. App.CDallas 1994, no writ) (citing Meyers and stating that pleadings
alleging that repossession agents demolished improvements to real property
while repossessing mobile home adequately asserted breach of peace).





[7]  See Romo, 577 S.W.2d at 252B53.





[8]  See Woods, 152 Tex. Crim. at 342, 213 S.W.2d
at 687 (no weapon; actor struck and kicked appellant=s wife); Knot, 853 S.W.2d at 805 (beer bottle
used as a weapon).





[9]  See Head, 131 Tex. at 99; 96 S.W.2d at 982
(public conduct that Athreaten[s] danger and disaster to the community@ breaches the peace (quoting 9 Corpus Juris at
386B88)).  





[10]  See Crowley, 842 S.W.2d at 704.  In Crowley,
the First Court of Appeals took Ajudicial
notice of the number of traffic-related incidents that lead to violence in
Harris County@ and explained that fleeing the scene of an accident
is Alikely to arouse violent resentment that incites
others to break the peace.@  Id. 
The court further reasoned that Crowley Ainvaded
the security and protection afforded to every citizen when she failed to stop
and provide [the other driver] with the information required by statute.@  Id.





[11]  See Dunn, 979 S.W.2d at 409.  Dunn was
decided on narrow and very specific facts.  As the Seventh Court of Appeals
explained, 

Appellant was criminally trespassing, for he had
previously been asked to leave . . . . When the
stockman discovered appellant the second time that day, he was aware of a
recent armed robbery and the ongoing manhunt for a wanted fugitive, and
appellant was actively concealing his presence by laying low in the brush. 
Given the facts, appellant=s attempt to
conceal his presence on the private property of another, during the course of a
manhunt for an armed fugitive, constituted an Ainvasion of the security and protection which the laws afford every
citizen@ and rose to the level of Athreatened violence.@

Id.





[12]  See Leache, 22 Tex. Ct. App. at 314, 3 S.W.
at 546 (cursing in a public place in a manner calculated to disturb the
inhabitants).





[13]  Cf. Tex.
Penal Code Ann. ' 42.01 (Vernon Supp. 2007) (offense of disorderly
conduct, which effectively codifies many breaches of the peace, requires
intentional or knowing conduct); see also Tex. Bus. & Com. Code Ann. ' 9.609(b)(2)(b) (nonjudicial repossession permitted Aif it proceeds without breach of the peace@) (emphasis added). 





[14]  The Chapas also rely on the Alabama case of General
Finance Corp. v. Smith, another case in which the conduct constituting a
breach of peace is not described.  505 So. 2d 1045, 1046 (Ala. 1987) (per
curiam) (AThe case was submitted to the jury on conflicting
evidence.  For purposes of our discussion, we find it unnecessary to state the
tendencies of the evidence in detail.@).





[15]  In addition, the Chapas rely on Griffith v.
Valley of the Sun Recovery & Adjustment Bureau, Inc., another case in
which the repossession agent was mistaken for a car thief.  613 P.2d 1283, 1284
(Ariz. Ct. App. 1980).  The agent set off the car=s burglar alarm, and one of the car owner=s neighbors responded to the scene with a shotgun.  Id.  The
owner shouted for the gun, and as the neighbor passed the gun to the vehicle
owner, it accidently discharged and severely injured a bystander.  Id. 
As with the previous cases, this case is readily distinguishable from the
present case, in which the repossession agent was unseen and no confrontation
occurred.  Other cases cited by the Chapas are distinguishable on the same
basis.  See, e.g., Morris v. First Nat=l Bank & Trust Co. of Ravenna, Ohio, 254 N.E.2d 683, 686B87 (Ohio 1970) (breach of peace occurred when agents were Aphysically confronted by appellant=s representative, disregarded his request to desist
their efforts at repossession and refused to depart from the private premises@); Manhattan Credit Co. v. Brewer, 341 S.W.2d
765, 766 (Ark. 1961) (conversion occurs if force or threats of force are used);
Hollibush v. Ford Motor Credit Co., 508 N.W.2d 449, 451B52 (Wis. Ct. App. 1993) (breach of peace occurred when
vehicle repossessed over objections of owner=s
fiancé); Nichols v. Metro. Bank, 435 N.W.2d 637, 638B39 (Minn. Ct. App. 1989) (repossession agent
approached owner as she drove into her driveway, demanded she surrender her
car, reached through window, Atook hold@ of owner=s
hand, turned off car, and took car keys).





[16]  Appellees also argue that section 9.609 does not
apply because Chambers did not intend to repossess the vehicle owned by Carlos
and Maria Chapa, who were not in default.  Because we conclude that Chambers
did not breach the peace, we do not address appellees= argument that a person who inadvertently repossesses
the wrong vehicle does not have a statutory duty to avoid breaching the peace. 





[17]  We note that in their answers to requests for
admission, the Chapas characterized their physical injuries as manifestations
of mental or emotional harm.





[18]  Sanchez has not been widely followed.  See
Mbank El Paso, N.A. v. Sanchez, 836 S.W.2d 151, 159B60 (Tex. 1992) (Hecht, J., dissenting) (listing
activities that have been held not to be inherently dangerous, including use of
heavy equipment, inflammable materials, electrical work, blasting, and refinery
operations, and concluding that nonjudicial repossession also is not inherently
dangerous).  Texas courts have found very few activities Ainherently dangerous.@  See Islas, 228 S.W.3d at 652 n.12 (Tex. 2007)
(collecting cases).  Moreover, at least three courts of other jurisdictions
have held that nonjudicial repossession is not inherently dangerous.  See,
e.g., Gfeller v. Russo, 2007 N.Y. Slip Op. 08519, at *2 (N.Y.
Nov. 9, 2007); Jiggetts v. Lancaster, 531 S.E.2d 851, 853 (N.C. Ct. App.
2000); Bible v. First Nat=l Bank of Rawlins, 515 P.2d
351, 354B55 (Ariz. Ct. App. 1973).





[19]  See, e.g., St. Elizabeth Hosp. v. Garrard,
730 S.W.2d 650, 650 (Tex. 1987) (body of  infant was delivered to a mortuary
and disposed of in an unmarked, common grave without the knowledge or consent
of either parent), rev=d on other grounds, Boyles,
855 S.W.2d at 597; Bailey v. Am. Gen. Ins. Co., 154 Tex. 430, 432B33, 279 S.W.2d 315, 316 (1955) (workers compensation
case using statutory definitions without requirement of causation); Duty v.
Gen. Fin. Co., 154 Tex. 16, 18, 273 S.W.2d 64, 64 (1954) (mental and
physical injuries were wilfully and wantonly inflicted); St. Louis Sw. Ry.
Co. v. Alexander, 106 Tex. 518, 521B22,
172 S.W. 709, 710 (1915) (wilful tort); Hill v. Kimball, 76 Tex. 210,
215, 13 S.W. 59, 59 (1890) (tenant miscarried after landlord committed two
bloody assaults in her presence; court allowed recovery for mental anguish if
accompanied by physical manifestation); Cavitt v. Jetton=s Greenway Plaza Cafeteria, 563 S.W.2d 319, 323B24 (Tex. Civ. App.CHouston [1st
Dist.] 1978, no writ) (sight of roach in food aggravated preexisting stomach
ailment); Cowden Cab Co. v. Thomas, 425 S.W.2d 886, 889 (Tex. Civ. App.CFort Worth 1968, writ ref=d n.r.e.) (Chapas rely on language taken from a jury
charge  in a waived point of error); Sutton Motor Co. v. Crysel, 289
S.W.2d 631, 633B34 (Tex. Civ. App.CBeaumont
1956, no writ) (passenger in car accident developed neurosis requiring
hospitalization).





[20]  See Keith, 970 S.W.2d at 542 (mother who
arrived at accident scene while rescue operations were underway and witnessed
her daughter=s pain and suffering was not a bystander, because she
did not hear or see the accident); Hewitt v. Chadwick, 760 S.W.2d 333,
334 (Tex. App.CTexarkana 1988, no writ) (holding that parents who did
not contemporaneously perceive the event that caused their child=s injury are not bystanders).





[21]  See Freeman, 744 S.W.2d at 923B24.  





[22]  Keith, 970 S.W.2d at 542 (citing Freeman,
744 S.W.2d at 924).  





[23]  The parties dispute the length of time that the
children were gone.  Maria Chapa contends that Chambers did not return for
fifteen or twenty minutes, and Chambers contends that five minutes is a closer
approximation.  Because this appeal concerns summary judgment, we construe the
facts in favor of the Chapas as the non-movants.





[24]  Dillon, 441 P.2d at 920.





[25]  After Chambers returned the vehicle, Maria learned
of the Aaccident@
and the condition of her children, but she acquired this knowledge from
others.  She did not witness the accident or the injuries, but learned of them
from her children after the occurrence. This is exemplified in Maria=s testimony:

A:         I was still crying.  I was still hysterical. 
I saw a truck coming this way but I didn=t know it was mine because my truck was facing this way, like I said.  So as it approached
me, he [Chambers] came - - he came down and he gave me the keys and all I told
him, I said, Why did you do this to me?

Q:         What did he tell you?

A:         He said, I=m sorry, ma=am, and he left off.

. . .

Q:         What did your children tell you had
happened?

A:         That a wrecker truck had taken them.

Q:         Did they tell you anything else about it? 
Did they tell you whether or not the driver spoke to them, did they say
anything like that to you?

A:         Yes.

Q:         What did they tell you?    

A:         They didn=t tell me.  They told whoever it was there because, again, at the
moment I was - - I was very nervous.  I was crying.  I was feeling
light-headed, dizzy.  My side was feeling numb.  But I recall them talking
to a police officer and told them that the guy took them somewhere around the
corner and they were waving their hands and screaming and yelling at that man
so he realized that they were inside the truck because apparently he didn=t know they were in there.

. . .

Q:         From what your children explained to you
- - 

A:         Yes.

Q:         - - it appeared to them as that as
soon as the driver realized - - 

A:         Yes.

Q:         - - they were in the vehicle, he returned
the vehicle?

A:         Uh-huh. 

(emphasis added).





[26]  Traciers and Chambers also moved for no-evidence
summary judgment on the ground that the children  were not Aphysically injured,@
and Ford asserted that the children were not Aseriously@ injured.  In light of our conclusion that the mental
anguish experienced by the Chapa=s
is independent of any injury to the children, we do not reach the alternative
grounds asserted in the motions for summary judgment.





[27]  Regarding the claim of negligent hiring, the Chapas
also failed to identify any connection between Chambers=s prior criminal background and his mistaken judgment
in this case.