Kelly Lee KNOT, Appellant,

v.

The STATE of Texas, Appellee.

No. 07–91–0254–CR.

Court of Appeals of Texas,
Amarillo.

April 28, 1993.

L. Van Williamson, Amarillo, for appellant.

Danny Hill, Dist. Atty., Michael D. Meredith, Asst. Dist. Atty., Amarillo, for appellee.

Before REYNOLDS, C.J., and BOYD and POFF, JJ.

REYNOLDS, Chief Justice.

A jury found appellant Kelly Lee Knot guilty of theft of property valued at more than $750 but not over $20,000 and, finding the enhancement allegations in the indictment true, assessed his punishment at confinement for life. Appellant challenges his conviction by six points of error, the first three of which pertain to his arrest, the next two of which concern the court's charge, and the last of which relates to the voir dire examination. Because of error in the court's charge, we will reverse and remand.

Pretrial, appellant moved the court to suppress evidence he alleged was obtained as the result of his illegal detention and arrest by a civilian and his warrantless arrest by a police officer. After a hearing, the court overruled the motion, the subject of appellant's first three points of error.

At the conclusion of the guilt-innocence phase of the trial, appellant requested, and the court denied, instructions regarding the legality of his detention and arrest. The court's denial is the subject of appellant's next two points of error.

These five points require a review of the evidence, which is summarized from the evidential record made at trial, and with reference to the pretrial hearing where appropriate. Dana Lerch, half owner of the Amarillo Tavern, and her niece, Nesigh Kaentong (Nett), testified that on 1 June 1991, they were tending bar at the Amarillo Tavern and had placed their purses on the beer cooler behind the bar. There were about four or five regular customers in the bar along with a "gentleman," whom they identified as appellant, who was not a regular customer.

Lerch left the bar area to talk to a repairman. Nett continued to serve customers at the bar. Within a five-minute span of time, both women noticed their purses and appellant were missing. Upon questioning the customers, they determined that no one, other than appellant, had left the bar area except to go to the restroom. Neither woman saw appellant take the purses.

Lerch had $5,000 in cash of her own money in her purse, including her collection of between six to eight two-dollar bills. Also in her purse was a bank bag with an unidentified amount of checks and cash belonging to the tavern. Nett had approximately $400 in cash in her purse.

It was the testimony of Fabian Baez, a regular customer of the Amarillo Tavern, that as he was entering the tavern, a man he identified as appellant was leaving hurriedly, carrying two purses. Appellant got on a bicycle and rode away.

When the police arrived, Lerch described the offender as a Hispanic male, 25 to 28 years old, between 5′8″ and 5′9″ in height, and weighing approximately 140 pounds. He was wearing blue jeans and a "brown spot" shirt. After the police left, Lerch began to search the alley behind the tavern. She followed bicycle tracks along the row of dumpsters, looking in each for her purse. Next to the sixth dumpster, the bicycle tracks ended. There, she found the two purses, a bicycle and a brown shirt with black spots, all of which she later took to the police station. Only the cash and checks had been taken out of the purses and the bank bag.

Gilbert Champion, manager of the Amarillo Tavern who was not working at the time of the theft, arrived for work and met Lerch coming from the alley, carrying two purses and crying. Lerch relayed the events surrounding the theft to Champion. Later that evening, a woman called Champion and told him that the man who stole the purses was at the Cattleman's Club, but when Champion went to the club, he

did not find anyone matching the description he had been given by either the informant or Lerch.

The next day, June 2, a man who had been in the tavern when the purses were stolen, telephoned Champion and said the man who had taken the purses was across the street at the laundromat. Champion went to the laundromat and, upon entering, saw about five people there, including the lady who worked there. Only one person, appellant, matched the descriptions he had been given. He telephoned Nett and asked her to come over and see if she could identify the suspect as the man who stole the purses.

Appellant, who was standing near Champion when he made the phone call, was looking across the street toward the tavern, and when Nett started to cross the street, appellant "kind of looked and ducked, looked and ducked." As Nett was crossing the street, appellant "just started to take off running." Appellant "had a beer bottle in his hand" and, Champion said, as he grabbed him, "he kind of threw it at me." In "a little struggle," Champion got appellant on the ground, and asked Nett if he was the one who had taken the purse. She looked and said, "Yes."

Champion asked Nett to call the police and send over the tavern's security guard. When the security guard arrived, he put handcuffs on appellant and they waited for the police. Amarillo police officers arrived. Officer Efram Contreras was told by Champion that two purses had been taken the day before by appellant, who was positively identified as the subject taking the purses. Contreras replaced the security guard's handcuffs with his own, and then questioned the identifying witness, Nett.

After Nett identified appellant as the offender, officers Contreras and Birkhead searched appellant and found "a large amount of money in his front and both of his back pockets." Birkhead testified that "$53 in cash, which was 2 twenty-dollar bills, 2 five-dollar bills and 3 one dollar bills" was found in his left front pocket. In his back right pocket, "he had a bundle of one hundred dollar bills that was folded in half, and there was 40 of those. And then he had a thin black vinyl wallet which contained 8 two-dollar bills."

Appellant called only one witness in his defense to contradict Champion's version of the events surrounding the arrest. Christine Walters, who was working at the laundromat on June 2, testified that appellant was in the laundromat washing his clothes when two men came over from the Amarillo Tavern to talk to him. After the two men left, Champion came in and made a telephone call. Walters overheard Champion telling the other party to come to the laundromat, "Now." Appellant left the laundromat, walking fast, when the five or six men grabbed him outside the laundromat. When asked if appellant threw anything inside the laundromat, she replied, "No, not that I know of."

When the parties closed, the trial court entertained appellant's special requested charges to the jury. Among others, appellant requested charges on the circumstances when an officer and a civilian may arrest a person without a warrant as the predicate for two requested charges instructing the jury not to consider evidence the jury believed may have been obtained in violation of the constitution or laws of the State of Texas, *i.e.*, as a result of (1) an unlawful arrest by a peace officer, and (2) an unlawful detention and arrest by a private citizen. The court denied the requested charges.

With his first three points of error, appellant contends he is entitled to a reversal of the judgment because the trial court erred in overruling his pretrial motion to suppress evidence. This results, he argues, since the evidence was obtained as a result of (1) the illegal detention and arrest by a private citizen and (2) the unlawful warrantless arrest and search by a police officer, thereby (3) precluding the admission of the currency found on him and all other evidence obtained as a result of the arrests. *See* Tex.Code Crim.Proc.Ann. art. 38.23(a) (Vernon 1979; Vernon Supp.1993).[1]

1. Unless otherwise indicated, all subsequent references to articles are to those articles of the

■ It cannot be disputed that when Champion restricted appellant's movement and restrained him, appellant was not only detained, he was arrested, *Hoag v. State*, 728 S.W.2d 375, 379 (Tex.Cr.App.1987), especially since he was handcuffed. *Burkes v. State*, 830 S.W.2d 922, 925 (Tex.Cr.App. 1991). However, Champion had the right to arrest appellant without a warrant if he committed, within Champion's view, a felony or an offense against the public peace. Art. 14.01(a).

At the pretrial hearing, Champion testified that as appellant "started running—he had a beer bottle, he had a Corona bottle in his hand, and he kind of swung it at me." Asked if appellant threw a beer bottle at him, Champion replied, "Yes, sir. He had a Corona in his hand." Walters, the laundromat worker, did not testify at the pretrial hearing, but appellant was permitted to state her testimony. The statement did not controvert Champion's testimony of appellant's breach of the peace. Given the undisputed testimony of appellant's offense against the public peace committed in Champion's presence, his arrest by Champion was authorized. Art. 14.01(a); *Romo v. State*, 577 S.W.2d 251, 253 (Tex.Cr.App. 1979).

It was Contreras' testimony that when he arrived and inquired what was going on, Champion advised him that appellant had been identified as the person taking the purses. Contreras then took the handcuffs off appellant and replaced them with his handcuffs. His only reference to an arrest was when he gave an affirmative answer to appellant's questions whether he was acting on information from Gilbert Champion in making the arrest.

■ With the record in this state, it is not profitable to pursue appellant's argument that his arrest by Contreras was illegal under the various laws authorizing an officer to make a warrantless arrest. Once appellant was legally arrested by Champion, Contreras did not make another arrest of appellant; he merely took custody of appellant following his legal arrest by Champion. The arrest being valid, the evi-

Texas Code of Criminal Procedure Annotated

dence that appellant attempted to have suppressed was admissible. *Vasquez v. State*, 739 S.W.2d 37, 45 (Tex.Cr.App.1987). Consequently, the court did not err in overruling appellant's motion to suppress evidence. The first three points of error are overruled.

■ At trial, the testimony of Walters, the laundromat worker, contradicted Champion's testimony that appellant committed a breach of the public peace in his presence, the basis for Champion's lawful arrest of appellant. Thus, the testimony raised an issue of the validity of appellant's arrest and the resulting seizure of evidence admitted against him at trial, thereby invoking these statutory provisions:

(a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

Art. 38.23(a).

Not only has it been said that the terms of the article are mandatory, *Jordan v. State*, 562 S.W.2d 472 (Tex.Cr.App.1978), but appellant effectively requested an instruction under the article. Even if his requested instructions were not model ones, it is clear from the record that the court was put on notice of the omission of the instruction, which the court was statutorily bound to submit to the jury. *Stone v. State*, 703 S.W.2d 652, 655 (Tex.Cr.App. 1986). To the extent that appellant utilizes his fourth and fifth points of error to complain of the court's denial of his requested charge, the points are sustained.

(Vernon 1979; Vernon Supp.1993).

Although the *Stone* court held that the failure to submit the requested charge was reversible error, *id.,*[2] a recent opinion of the Court of Criminal Appeals directs that a harm analysis be made when the court fails to submit the required instruction. *Reynolds v. State,* 848 S.W.2d 148 (Tex.Cr.App.1993). Inasmuch as the admissibility of evidence crucial to the State's prosecution depends upon the resolution of the fact issue of the legality of appellant's arrest, we are unable to say beyond a reasonable doubt that appellant was not harmed by the failure of the court to submit the required instruction. Tex.R.App.P. 81(b)(2).

Accordingly, the limited sustainment of appellant's fourth and fifth points of error mandates a reversal of the judgment and a remand of the cause to the trial court. It then becomes unnecessary to address appellant's sixth point, which relates to the voir dire examination, a point unlikely to arise in the event of further proceedings. Tex.R.App.P. 90(a).

The judgment is reversed and the cause is remanded to the trial court.

---

**2.** In determining that the trial court's failure to instruct the jury on the issue was reversible error, the *Stone* court relied on the mandatory language which was used in *Jordan v. State,* 562 S.W.2d 472, 473 (Tex.Cr.App.1978), as the basis for its holding that reversible error was committed when the trial court refused to instruct the jury on the issue of the legality of the search and seizure. *Id.* at 474.