# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00447-CR

**Amber Renae Dabbs, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR-07-491, HONORABLE GARY L. STEEL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Amber Renae Dabbs guilty of possessing more than four ounces of marihuana, and the trial court assessed her punishment at two years in state jail. *See* Tex. Health & Safety Code Ann. § 481.121(a), (b)(3) (West 2003). Appellant contends that the trial court erred by overruling her motion to suppress evidence found during a search of her car and by refusing to submit a special jury instruction regarding the legality of this seizure. She also contends that the police officer who seized the evidence lied during his trial testimony and that the chain of custody for the evidence was not adequate. Appellant further urges that the trial court erred by admitting a video recording of a telephone call she made while in custody and that the prosecution failed to timely disclose an unredacted version of the recording. Finally, appellant contends that the properly admitted evidence is legally and factually insufficient to sustain her conviction. We affirm the conviction.

## BACKGROUND

San Marcos police officer Daniel Royston was the sole witness to testify, at the suppression hearing and at the trial, regarding the events leading up to the discovery and seizure of the marihuana on which this prosecution was based. Royston testified that just before 4:00 a.m. on June 16, 2007, he was dispatched to Lucy's Barfish, a bar in downtown San Marcos. He was told that the manager of the bar had interrupted an attempted burglary, two of the suspects had fled, and a third suspect was being detained at the bar.

When Royston arrived at Lucy's Barfish a few minutes later, he found two persons inside: Scott Cook, who he learned was the bartender, and appellant, who he learned was the detained suspect. Cook told Royston that he heard someone rattling the door to the bar and went outside to investigate. Cook saw two men trying to pry open the door to a neighboring building. The men fled, pursued by Cook. The men ran to a car parked in a lot about fifty yards away. Appellant was sitting at the wheel of this car. Royston testified that Cook told him, "When he walked up to her car, she was sitting behind the wheel and they jumped out and ran off leaving her there. So he told her to come back into the bar with him and she did so."

Royston testified that he asked appellant for her driver's license and she told him that it was in her car. Royston then drove appellant, who was not physically restrained, to the parking lot in his patrol vehicle. He testified, "We both walked up to her car. She went to the driver's side and I escorted her. I was standing next to her and she reached into the car and she got her purse. And while she was getting her purse and looking for her ID, I—from where I was standing I looked inside the car." Royston testified that he saw in plain view on the front floorboard what appeared

2

to be a gallon-sized glass jar containing a green leafy substance that he believed was marihuana. Royston said that when he asked appellant what was in the jar, "She didn't say anything. She just turned around and put her hands behind her back." Royston handcuffed appellant, placed her in his patrol vehicle, and searched the interior of the car. In addition to the jar of marihuana, Royston found and seized a plastic bag also containing marihuana, a grinder of the type used to prepare marihuana for smoking, a glass pipe, a small scale, a box of plastic bags, and a money clip with $416.

## MOTION TO SUPPRESS

Appellant moved to suppress the evidence found in her car pursuant to article 38.23, contending that Cook unlawfully arrested her for attempted burglary and that the evidence was the fruit of this unlawful citizen's arrest. *See* Tex. Code Crim. Proc. Ann. art. 38.23 (West 2005). Appellant notes that a private citizen may arrest an offender without a warrant for an offense committed in his presence only if the offense is a felony or an offense against the public peace. *Id*. art. 14.01(a). Attempted burglary of a building is a misdemeanor, and appellant argues that it is not an offense against the public peace. *See* Tex. Penal Code Ann. §§ 15.01(d), 30.02(c)(1) (West 2003).

The trial court overruled the motion to suppress on the ground that, even if Cook's detention of appellant was unlawful, the evidence appellant sought to suppress was not obtained as a result. As the court explained at the hearing, "This [evidence] was not obtained by Mr. Cook, so whether she was legally or illegally detained by him becomes irrelevant in this motion to suppress. And in the testimony of the officer, I find no violation of any Constitutional rights or laws of the

3

State of Texas by the officer . . . ." The court later filed written findings of fact and conclusions of law. The court concluded that Royston lawfully detained appellant for investigation, that Royston saw the jar of marihuana in plain view during the course of his investigation, and that the seizure of the challenged evidence was lawful.

A trial court's ruling on a motion to suppress is reviewed for an abuse of discretion. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). This means that the ruling will be upheld if it is reasonably supported by the record and is correct under any applicable legal theory. *Id*. The trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give the trial court almost complete deference in determining historical facts, but we review de novo the trial court's application of the law to those facts. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000).

Appellant urges that the trial court's legal conclusions were in error for several reasons. First, appellant contends that she was arrested by the officer, and not merely detained for investigation. Citing Royston's testimony at the suppression hearing that she was not free to leave, appellant argues that she was actually placed under restraint by the officer and hence arrested under the terms of article 15.22. Tex. Code Crim. Proc. Ann. art. 15.22 (West 2005). As the court of criminal appeals has recently observed, however, article 15.22 is of no help in determining whether a person was subjected to a Fourth Amendment arrest or only an investigatory detention. *State v. Sheppard*, 271 S.W.3d 281, 290 (Tex. Crim. App. 2008). Article 15.22 predates *Terry v. Ohio*, 392 U.S. 1 (1968), and does not distinguish between arrests and detentions, both of

4

which involve a restraint of the person. *Id.* Whether a particular restraint is an arrest or a detention depends on the amount of force employed, the duration of the restraint, and the efficiency of the subsequent investigative process. *Id.* at 291.

In the cause before us, the evidence shows that Royston did not draw his weapon, handcuff appellant, or otherwise engage in a show of force. Insofar as the record reflects, appellant's degree of incapacitation by Royston prior to the discovery of the marihuana was no more than necessary to safeguard the officer and assure appellant's presence during the period of investigation. *See id.* Appellant does not contend that Royston did not have a reasonable suspicion that she had recently been engaged in criminal activity. *See Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). We agree with the trial court's conclusion that appellant was lawfully detained for investigation by the officer at the time the marihuana was discovered.

Next, appellant argues that having been unlawfully arrested by Cook, she could not be "unarrested" and merely detained by Royston. As authority, she cites *Knot v. State*, 853 S.W.2d 802 (Tex. App.—Amarillo 1993, no pet.). In that case, Knot was arrested and placed in handcuffs by a private security guard for a theft that had occurred the preceding day. *Id.* at 804. When police officers arrived at the scene in response to the guard's call, they immediately replaced the guard's handcuffs with their own and took Knot into their custody. They then searched him and found evidence that incriminated him in the theft. *Id.* Knot unsuccessfully moved to suppress this evidence as the product of both an unlawful citizen's arrest and an unlawful arrest by the police. *Id.* at 803. After reviewing the circumstances, the court of appeals concluded that the guard's arrest of Knot had been lawful. *Id.* at 805. The court went on, "With the record in this state, it is not profitable to pursue [Knot's] argument that his arrest by [the officer] was illegal . . . . Once [Knot]

5

was legally arrested by [the guard], [the officer] did not make another arrest of [Knot]; he merely took custody of [Knot] following his legal arrest by [the guard]." *Id*. Similarly, appellant argues that Royston merely took over the custody begun by Cook's citizen's arrest. In effect, appellant argues that if Cook unlawfully arrested or restrained her, her continued restraint by Royston was necessarily unlawful.

*Knot* must be read in light of its facts. Those facts show that the first act of the police upon arrival was to handcuff Knot and take him into custody for the theft based solely on what they were told by the security guard. *Id*. at 804. There was no dispute that Knot was under arrest both before and after the police arrived. Only after arresting Knot did the police conduct an independent investigation of the alleged theft. *Id*. Under those circumstances, it is understandable that the court of appeals found that Knot had been subjected to one continuing arrest.

The facts in appellant's case are considerably different. Royston did not effect a custodial arrest of appellant immediately after arriving at Lucy's Barfish. The evidence objectively supports Royston's testimony that he detained both Cook and appellant temporarily while he gathered more information regarding the reported attempted burglary. It was in the course of this investigation that Royston took appellant to her car so that she could retrieve her driver's license. It was only after Royston saw the jar of marihuana that he arrested appellant, not for the attempted burglary, but for possession of the marihuana.

Appellant argues that even if she was merely detained by Royston, that detention was unlawful because the officer did not advise her of her rights before questioning her. If Royston interrogated appellant without first advising her of her rights, any resulting statement might have

6

been inadmissible. But appellant cites no authority, and we know of none, holding that the unwarned interrogation of a suspect who is lawfully in custody renders that custody unlawful.

Finally, appellant contends that Royston's discovery of the marihuana in her car was the inadmissible fruit of her unlawful arrest or restraint by Cook. We agree that there was a "but for" connection between Cook's restraint of appellant and Royston's subsequent discovery of the marihuana. But evidence is not the "fruit of the poisonous tree" simply because it would not have been discovered but for the primary violation. *State v. Iduarte*, 268 S.W.3d 544, 550 (Tex. Crim. App. 2008). The more apt question is whether, granting the primary illegality, the evidence to which objection is made was come at by exploitation of that primary illegality or instead by means sufficiently distinguishable to be purged of the primary taint. *Id*. at 550-51 (quoting *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)).

Article 38.23 provides that evidence obtained by an officer or other person in violation of the constitution or laws of Texas or the United States shall not be admitted. Tex. Code Crim. Proc. Ann. art. 38.23(a). As the trial court correctly observed, it is irrelevant whether Cook's restraint of appellant was unlawful because the evidence appellant sought to suppress was not obtained by Cook as a direct result of that restraint, nor was it obtained by Royston through the exploitation of evidence or information obtained by Cook. Instead, the challenged evidence was obtained as a result of Royston's independent investigation of the reported criminal activity, during which he lawfully detained appellant. Under the circumstances here, if appellant was unlawfully restrained by Cook, that initial illegality did not taint Royston's discovery of the contraband. The trial court properly overruled the motion to suppress. Point of error one is overruled.

7

**JURY INSTRUCTION**

Appellant contends that the trial court erred by refusing to submit her requested article 38.23 instruction. That instruction would have told the jury:

> [B]efore you may consider the testimony of Corporal Daniel Royston concerning the search of the Defendant's vehicle, the physical evidence discovered in the search of the Defendant's vehicle, and all statements made by the Defendant, you must first find beyond a reasonable doubt that Scott Michael Cook, a civilian, had probable cause to believe and did believe that the Defendant had committed the felony offense of burglary of a building, namely Lucy's Barfish, and if you do not so find beyond a reasonable doubt, or if you have a reasonable doubt, you will disregard all such testimony and evidence, and you shall find the Defendant NOT GUILTY.

A defendant is entitled to an instruction under article 38.23 only if there is a contested issue of fact that is material to the lawfulness of the challenged conduct in obtaining the evidence. *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007). Whether Cook had probable cause to arrest appellant was a question of law for the trial court, not a question of fact for the jury. *See id*. at 511. Moreover, for the reasons we have already discussed, the legality of Cook's restraint of appellant was not material to the lawfulness of Royston's conduct in obtaining the evidence. The trial court properly refused the requested instruction. Point of error two is overruled.

**PERJURY**

Appellant contends that Royston committed perjury when he testified at trial that appellant was "free to leave" when he arrived at Lucy's Barfish. She contends that this testimony conflicts with Royston's testimony at the suppression hearing, when he said that appellant was "not free to go."

At the suppression hearing, Royston was questioned by defense counsel as follows:

8

Q. Now when you were testifying right now on direct, you stated that you drove Ms. Dabbs to her car to get her ID. And when the prosecutor asked, "You didn't want to just let her go get it?" your response was, "I didn't want her to run off." Was she under your detention at that time by you?

A. Yes.

Q. Was it your interpretation when you arrived [at Lucy's Barfish] that [appellant] was under detention by Mr. Cook?

A. Yes.

Q. She was not free to go; is that correct?

A. Not when I got there. Certainly not.

Royston's challenged trial testimony, also in response to defense counsel's questions, was:

Q. When you arrived inside the bar and saw the complainant, Mr. Cook, and Ms. Dabbs, isn't it a fact that at that moment your perception of Ms. Dabbs was that she was not free to leave?

A. No, that is not correct.

Q. Ms. Dabbs was free to leave the bar prior to your arrival?

A. My perception was—actually, I thought she was one of the waitresses. She was seated at a table. I thought she worked there.

Q. Well, then—your testimony is, then, that your perception was she was free to leave prior to your arrival and after your arrival she was not free to leave?

A. That is correct.

We find no necessary inconsistency in the officer's testimony at the suppression hearing and at trial, much less an inconsistency intended to deceive. *See* Tex. Penal Code Ann. § 37.02 (West 2003). Royston could have reasonably understood counsel's questions at the

9

suppression hearing to be referring to the situation as the officer learned it to be upon his arrival; that is, that appellant was the burglary suspect being detained by the bartender and who was then detained by the officer for further investigation. Counsel's questions to Royston at trial, on the other hand, expressly inquired into the officer's perception of the situation at the moment he entered the bar. As Royston explained, he initially thought that appellant was simply a waitress. In other words, Royston believed that appellant was a bystander who was free to leave until he learned that she was, in fact, the detained suspect.

Even if the record supported appellant's contention that Royston deliberately lied during his trial testimony, and even if knowledge of that perjury could be imputed to the State, the testimony was harmless beyond a reasonable doubt. *See Ex parte Castellano*, 863 S.W.2d 476, 485 (Tex. Crim. App. 1993). As we have already discussed, whether appellant was unlawfully arrested or otherwise restrained by Cook was irrelevant to her motion to suppress the marihuana. We have also explained why the trial court properly refused appellant's requested article 38.23 instruction inquiring whether Cook had probable cause to arrest appellant. Similarly, Cook's alleged unlawful arrest or restraint of appellant was also irrelevant to the question of whether appellant intentionally or knowingly possessed the marihuana. Point of error five is overruled.

10

# CHAIN OF CUSTODY

Appellant objected to the admission of the marihuana and other items found in her car on chain of custody grounds. She contends that the trial court erred by overruling these objections.

Royston testified that after seizing the evidence, he put the various items in plastic bags and placed them in his patrol car. The evidence remained in the patrol car while Royston took appellant inside the county jail to be booked. Royston then drove to the police station, where he placed the seized evidence in a large paper property bag, sealed the bag, marked the evidence tag attached to the bag, and placed the bag in a property locker.

Modelle Gibson, an evidence technician with the San Marcos police, testified that on June 19, 2007, she removed the property bag from the locker, logged the evidence in, and placed the bag in a secure evidence vault. On June 25, Gibson removed the plastic bags containing the suspected marihuana from the vault and took them to the Department of Public Safety laboratory in Austin. There, the bags were tagged, logged in, and placed in another locked property vault. Lou Haby, a forensic chemist at the DPS lab, testified that he is one of approximately fifty chemists who have access to the DPS vault. Haby said he removed the bags from the vault on July 9, determined by testing that the leafy substance was in fact marihuana, and returned the evidence to the vault. Gibson testified that after the DPS analysis was completed, she retrieved the bags of marihuana from the DPS and returned them to the police department vault, where they remained until trial began. Gibson also testified that on May 5, 2008, two days before trial, she took some of the paraphernalia from the vault for fingerprinting. This paraphernalia remained in Gibson's office overnight, and she delivered it to the court for use at trial the following morning.

Appellant contends that this testimony shows four breaks in the chain of custody. The first alleged break was on the night the evidence was seized by Royston, when the evidence remained in his patrol car while he booked appellant into jail. The second alleged break, which applies only to the marihuana, was from June 25 to July 9, 2007, while the marihuana was in the DPS vault and accessible to fifty chemists prior to testing. The third alleged break, also applicable only to the marihuana, began after Haby completed his testing and returned the marihuana to the DPS vault. Appellant contends that there is no evidence as to the whereabouts of the marihuana from that point until trial began. The fourth alleged break in the chain of custody was on the night of May 5, 2008, when the scales, grinder, and other paraphernalia were left in Gibson's office.

Appellant's contention that there was a gap in the chain of custody of the marihuana after it was tested is contradicted by the record. Gibson testified that she retrieved the marihuana from the DPS lab and returned it to the police department vault, where it remained until trial. The other alleged breaks in the chain were not breaks at all: the evidence was in Royston's custody while it was in his patrol car, the marihuana was in DPS custody while it was in the DPS vault, and the paraphernalia was in Gibson's custody while it was in her office.

The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. Tex. R. Evid. 901(a). Without evidence of tampering, questions concerning the care and custody of a substance go to the weight, not the admissibility, of the evidence. *Lagrone v. State*, 942 S.W.2d 602, 617 (Tex. Crim. App. 1997). At trial, Royston identified the bags of marihuana visually and by means of his notations on the evidence tag as being the marihuana that he seized on the night in question and placed in the evidence locker. In the same manner, Gibson

identified these exhibits as the marihuana she transported to the DPS lab for testing, and Haby identified the exhibits as the marihuana he tested at the DPS lab. The mere theoretical possibility that someone might have tampered with the marihuana prior to testing did not render the evidence, or the lab results, inadmissible. *See id*.

There was also no error in the admission of the paraphernalia. Royston identified the various items as being those he found in appellant's car on the night of her arrest. The mere possibility that these items might have been tampered with at some point went to the weight of the evidence, not its admissibility. *See id*. Point of error three is overruled.

## VIDEO

Following her arrest, appellant was placed in the back seat of Royston's patrol car, where her actions were recorded by the officer's in-car video equipment. Appellant was not told that she was being videotaped. While appellant waited for the officer to complete his search of her car, she made a call on her cell phone, which Royston allowed her to keep in her possession.[1] The video recording of appellant making this call, with appellant's side of the conversation, was introduced as State's exhibit 10. During the call, which lasted about a minute, appellant states, "I'm going to jail for that whole pound."

Appellant contends that the trial court erred by admitting exhibit 10 because defense counsel was not afforded sufficient time to review it. The record reflects that a copy of the exhibit was given to counsel on the morning jury selection began. When the State offered the exhibit the next

---

[1] On the unedited video, introduced for record purposes as exhibit 10A, appellant can be heard asking Royston for permission to keep her cell phone in order to call her mother.

13

day, on the morning of the first day of testimony, counsel objected that he had not had adequate time to review the exhibit. The State agreed to counsel's request that the video not be shown to the jury until after lunch, to give counsel additional time to prepare. That afternoon, Royston (the sponsoring witness) was recalled, and the exhibit was played for the jury without further objection on this ground by defense counsel. Because counsel was given all the time he requested, nothing is presented for review.

Appellant also contends that exhibit 10 was erroneously admitted because the recording of her conversation violated the state wiretapping statute. *See* Tex. Code Crim. Proc. Ann. art. 18.20 (West Supp. 2008). She further argues that the exhibit should not have been admitted on public policy grounds so as to discourage the police from engaging in conduct designed to circumvent the wiretapping statute.

Similar arguments were presented to this Court in *Meyer v. State*, 78 S.W.3d 505 (Tex. App.—Austin 2002, pet. ref'd). In that case, Meyer was placed in the back seat of a police patrol car following his arrest for driving while intoxicated. *Id*. at 506-07. As Meyer sat unattended in the patrol car, he made a number of oral statements that were recorded by the patrol vehicle's video system and introduced in evidence at his trial. *Id*. We held that in the absence of any conduct by the police designed to lull Meyer into the belief that his statements would be private, Meyer did not have a reasonable expectation of privacy as he sat handcuffed in the back seat of a police patrol car following his arrest. *Id*. at 508. Therefore, his statements were not protected "oral communications" within the meaning of the wiretapping statute. *Id*. at 508-09.

We reach the same conclusion in this case. Appellant had been arrested, handcuffed, and placed in the back seat of a police vehicle. Under those circumstances, she could expect her

movements and statements to be monitored. *See id*. at 508. Appellant was allowed to keep her cell phone, but there is no evidence that Royston said or implied that any calls she made as she sat in the patrol car would be private. Under the circumstances, appellant did not have a reasonable expectation of privacy, and the admission of the video recording of her telephone call did not violate either article 18.20 or public policy generally. Point of error four is overruled.

### *BRADY* COMPLAINT

Exhibit 10, the video recording of appellant making her telephone call, was an excerpt from the patrol car's video record of the events of June 16, 2007. The entire unedited video, approximately one hour long, was admitted for record purposes only as exhibit 10A. Appellant contends that the State violated its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to timely disclose this unredacted video recording to the defense.

The suppression by the prosecution of material evidence favorable to the defense violates due process without regard to the good or bad faith of the prosecution. *Id*. at 87; *Harm v. State*, 183 S.W.3d 403, 406 (Tex. Crim. App. 2006). This obligation to disclose extends to evidence known only to the police and applies even if there was no request by the defendant. *Harm*, 183 S.W.3d at 406.

The record tends to support appellant's assertion that the unredacted video was not disclosed to the defense until the afternoon of the first day of testimony. Appellant contends that the video recording was material to the defense because it shows that Royston interrogated appellant while she was in custody and without advising her of her rights. *See Miranda v. Arizona*, 384 U.S. 436 (1966). This questioning, appellant continues, led directly to the discovery of the marihuana and

15

other evidence in appellant's car. Appellant contends that she was prejudiced because the unredacted video recording was not disclosed until after Royston completed his testimony and the incriminating evidence had been admitted, and thus the recording could not be employed by the defense to exclude the evidence.

Other than to say that the alleged improper questioning is shown in the unredacted video, appellant does not identify the questions that she claims were improperly asked by Royston or the answers that she gave. We assume that appellant is referring to Royston asking her for identification, which led her to tell him that her driver's license was in her car, and which in turn led to the discovery of the marihuana.

The State's delayed disclosure of the unredacted video did not prejudice appellant's ability to assert her *Miranda* argument. *See Harm*, 183 S.W.2d at 406 (prejudice to defendant is incorporated into materiality requirement). Royston testified at the suppression hearing that he took appellant to her car after asking her for identification and being told that her driver's license was there. If defense counsel believed that the officer's request for identification raised a *Miranda* issue, he could have inquired at that time whether appellant had been advised of her rights before the request was made.

Moreover, no *Miranda* violation is shown insofar as the questions leading to the discovery of the marihuana are concerned. "Interrogation" within the meaning of *Miranda* refers to any words or actions by the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). Under the circumstances shown here, Royston was not reasonably likely to know that asking appellant for her name, proof of identification, and the

16

location of her car would elicit an incriminating response. *See also Pennsylvania v. Muniz*, 496 U.S. 582, 601-02 (1990) (questions concerning suspect's name, address, and other identifying information, did not constitute interrogation).

Appellant has failed to show that the unredacted video recording was material evidence favorable to the defense. No *Brady* violation is shown, and point of error seven is overruled.

## SUFFICIENCY OF EVIDENCE

Finally, appellant contends that without the evidence that she claims should have been suppressed, the evidence is legally and factually insufficient to sustain the guilty verdict. This contention fails because appellant's motion to suppress was properly overruled, and because all of the evidence the jury was permitted to consider, whether properly or improperly admitted, must be taken into account in determining the sufficiency of the evidence. *Garcia v. State*, 919 S.W.2d 370, 378 (Tex. Crim. App. 1994). Point of error six is overruled.

The judgment of conviction is affirmed.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed: June 2, 2009

Do Not Publish

17